MONTGOMERY *vs.* DUNNING.

*In the matter of the estate of* WORTHY W. MONTGOMERY, *deceased.*

THE rule that the inventory cannot be impeached, relates only to proceedings in relation to the inventory itself. It may be shown on the accounting of the administrator or executor, that the assets were not correctly stated in the inventory.

Where partnership property has come into the hands of an administrator, he is no further accountable than for the share of the deceased in the partnership assets, after payment of all the liabilities, and a full settlement of all the partnership accounts.

PORTER MONTGOMERY, *for next of kin.*
G. P. ANDROUS, *for administrator.*

THE SURROGATE. On the accounting of the surviving administrator, objection was made that the administrator had surrendered to one Fredericks, as assets of the firm of Montgomery & Fredericks, certain gold dust which, the next of kin allege, was the individual property of the deceased.

I think the proof in the case sufficient to establish the partnership between the intestate and Fredericks. I have come to that conclusion independently of the testimony of Fredericks. It appears also, that the deceased stated on his arrival here, that he had come to New York for the purpose of purchasing goods for the business, and had brought on some gold dust. The partnership existence being determined, the question remains as to the ownership of the gold. That fairly comes before the court, and is a proper subject for consideration. It is an error to suppose the inventory conclusive as to the extent of the assets. It is true an inventory cannot be impeached, but that rule relates only to proceedings in relation to the inventory itself. An account may be falsified, and upon the accounting of the administrator or

executor, the parties in interest are entirely at liberty to prove that he has not accounted for all that he has received or which he ought to have received. On such a charge, his inventory will not help him, for that is only his own sworn statement of the assets. Of course, the presumption of law is in favor of the correctness of the inventory, but this presumption goes no further than to make it *primâ facie* evidence of the assets. It may be rebutted, and it is entirely competent for next of kin, legatees or creditors, to show that the account is false or erroneous, in the omission of assets, either received or which ought to have been received. They may show that the administrator or executor has intentionally failed to account for certain portions of the estate, or that he has made himself liable by failing to collect, or improperly surrendering, the property of the intestate. The rule that an inventory cannot be impeached, has not the slightest applicability to an account. The latter is a separate proceeding which has nothing to do with the inventory. Even in the ecclesiastical courts, where an inventory and account frequently come in together, legatees and next of kin may disprove or object against the account. (4 *Burn, Ecc. L.*, 488; *Hinton* vs. *Parker*, 8 *Mod.*, 168.)

If the gold dust in the possession of the intestate, was partnership property, then the administrator is no further responsible in that respect, than for the interest of the deceased in the surplus of the partnership assets, after the settlement of the partnership accounts. Mr. Fredericks, the surviving partner, stated the accounts, and paid over to the administrator the amount found due to the deceased, according to that statement. Dunning cannot be made liable for more than he received, unless error or fraud be shown. I am satisfied that he acted in good faith, and there are no facts in proof to show that he ought to have engaged in litigation with the surviving partner, or that he could reasonably have hoped to have been successful if he had instituted a lawsuit. Fredericks positively avers that

the property in the possession of the deceased, for the most part, belonged to the firm, and that the accounts as settled, were strictly correct. He met the intestate's next of kin, at Onondaga, made the same statements to them, and having previously threatened legal proceedings against the administrators, agreed that he would not proceed within a certain period. He says, "They wished I would wait ten days before going on with suit against Dunning, and then George Montgomery would come down or write to me what their conclusion was. I supposed my lawyer had commenced suit." At the end of that time, Montgomery came to New York, and the settlement was made. These facts are not denied, nor has an attempt been made to disprove them. George Montgomery was himself one of the next of kin, and interested in making the most advantageous settlement with Fredericks. Dunning was sick at the time, and the arrangement was made by Montgomery, after the interview between Fredericks and the family, at Onondaga. All this seems fair, nor can I discover any indications of fraud or careless dealing. The parties interested were fully apprised of the claim of Fredericks, they heard his explanations, understood he would proceed at law, unless the matter was adjusted within a specified period, and yet took no steps to admonish or warn the administrators against yielding to the claim. The reasonable inference is, that they assented to the arrangement; but whether that was so in fact or not, they knew of the position Fredericks assumed, and if they desired to contest it, they were bound to give notice, and not let the administrators act upon the very natural supposition that their proposed course met with the sanction of the parties.

But apart from this, I do not see that the administrators have lost anything to the estate. There can be no doubt of the partnership, and the journey of the intestate to New York, on the partnership business. Looking at the object of the journey, and other circumstances, a presumption arises that the property belonged to the firm; and then,

Fredericks proves that positively. The original books and accounts were all shown to the administrator, Montgomery. Being partnership books, the presumption is in favor of their accuracy ; and again, Fredericks positively affirms it. The effort to impeach the acts of the administrators in this respect, must, therefore, fail. This disposes of the most important objection to the accounts. The others will be determined on the settlement of the decree.