LLOYD *v.* LLOYD.

v. *Willock* (9 *Ves.*, 233); *Peyton* v. *Bury* (2 *P. Wms.*, 626); 4 *Kent's Com.* (205); *Furness* v. *Fox* (1 *Cush.*, 134); *Bromfield* v. *Crowder* (4 *Bos. & P.*, 313); 2 *Swan.*, 442; *Andrew* v. *N. Y. Bible, &c., Soc.* (4 *Sandf.*, 156); *Jackson* v. *Winne* (7 *Wend.*, 47); *Caw* v. *Robertson*, 5 *N. Y.* [1 *Seld.*], 125).

---

NIAGARA COUNTY—HON. M. M. SOUTHWORTH, SURROGATE—1859.

## LLOYD *v.* LLOYD.

*In the Matter of the final Settlement of the Accounts of* JOHN LLOYD, *administrator, &c.*

An inventory is an act of the administrator or executor, to the correctness of which he is sworn, particularly as to all claims against himself; and,

---

therefore, if an administrator inventories, among the assets of the intestate, a promissory note, executed by himself to the deceased, without making any claim 'of set-off to the same in the inventory, this circumstance, unless satisfactorily explained, is, in connection with other adverse facts, suspicious; and, in a case where it appeared from the preponderance of testimony, that the items of the account constituting the set-off, existed before the delivery of the note,—*Held*, that the omission was evidence against the same, independent of the legal presumption of a settlement between the parties as to all prior matters.

*Held further*, that this rule applies to the whole demand, in a case where the claim of the administrator exceeds the amount.

Whether, as to a demand, thus inventoried, the administrator or executor is not estopped from setting up a defence in bar, such as satisfaction, payment, &c., which operates to discharge or extinguish the claim—*Query?*

Books of account, introduced as evidence of indebtedness of the deceased, are not conclusive. They should be sustained by other corroborating proof, as far as possible; and where kept in the form of a ledger, although a book of original entries, and some of the charges are written on erasures, and others appear to have been altered after they were first made, but little credit is due them.

The facts are fully stated in the opinion.

T. M. WEBSTER, *for Administrator*.

H. GARDNER, *for next of kin*.

THE SURROGATE.—In this case, the administrator, who is a son of the decedent, presents an account against the estate to the amount of $941.72, claiming a balance due him of $425.55. The account consists of demands for work and labor, from time to time, on the farm of the intestate, and for various articles of personal property sold to him during his lifetime, and is made up of numerous items. The dates of the charges commence in March, 1839, and end in April, 1852, and, with the exception of an interval of a year, the items extend through the whole time; and the credits given, also extend through the same period. The intestate died in March, 1855. The claim is controverted by the next of kin, and a mass of evidence has been submitted for and against it. The administrator mainly relies upon an account-book of original entries kept by him, which was admitted in evidence, after the proper foundation was laid, to sustain the

demand. The question of the admissibility of this kind of evidence as against the estates of deceased persons was not raised, nor that any part of the account was barred by the Statute of Limitations. A review of the testimony in detail is unnecessary, as there are certain facts, in reference to which there is no conflict of proof, decisive of the matters in issue. In the first place, although the account-book of the administrator has been admitted in evidence, it is far from being satisfactory. It is kept in the form of a ledger, and the accounts against the deceased are in pages distinct from the accounts against others in the same book. Many of the items are written on erasures; others appear to have been altered after they were first entered; and one whole page, from the appearance of the ink and the writing, looks as if it had been written over at the same time, although the charges are of different dates. On a close inspection of the book, I think but little credit is due to it; and with all the suspicious marks upon it, referred to, it comes fully within the language of Chief-justice PENNINGTON, of New Jersey, with respect to this kind of proof, directed more particularly against books kept in this form: "Books kept in this way open the door for the grossest frauds and injustice, and the most scandalous iniquity is daily practised under it. I am clearly of opinion myself, that books kept in this way ought never to be suffered to appear in a court of justice. But the law is otherwise, and they must be admitted the same as other books, when proved to be the ordinary books of account of the person offering them, in which he makes his original entries. But they ought to be considered as the most suspicious testimony that can be offered—little better than the declarations of the party in his own favor. Entries are frequently made after the controversy commences, and accounts opened years after the transactions have taken place which gave rise to them." Since the admission of parties as witnesses in their own behalf, where both are living, there is less danger from the introduction of this species of evidence than formerly; and perhaps the reasons for receiving it have been entirely

removed, in such cases. But where the party whose estate is sought to be charged by it is dead, extreme caution, as heretofore, should be exercised by a court or jury, in determining its weight and credibility. Other evidence in corroboration of the charges should be given, as far as possible. In this case there is no such proof. On the contrary, there are certain undisputed facts, to which I will briefly refer, which, together with the suspicious appearance of this account-book, satisfy me that the claim should be rejected. It is shown that soon after the death of the intestate there was a meeting of the children and next of kin of the deceased at his late residence, to effect a voluntary distribution of the property without administration, in order to avoid expense and delay. The administrator, as one of the next of kin, attended this gathering, and participated in the discussions. It was there stated, in his presence, that there was no difficulty in the way of this course, as it was not known that the deceased owed any thing. No claim was made by him, at this time, against the estate. It appears, also, that on another occasion, before administration, when one of the next of kin proposed to the administrator to divide the notes and accounts of the deceased equally among the children, he said nothing as to his having any demand. A witness, whose credibility cannot be doubted, testifies that before letters were issued to the administrator, he had a conversation with him respecting the indebtedness of the decedent, and that the administrator remarked that " he didn't think the estate owed much of any thing to anybody ;" and in another conversation, about the same time, in reply to a remark made by the witness that he did not believe the deceased owed his children much, the administrator said, " he didn't know—there might be some debts he didn't know of." The witness says that the administrator made no claim against the estate in either of these interviews.

There is still another circumstance, the act of the administrator, about which there can be no doubt, which I deem important to be mentioned. As administrator of the estate, it

was his duty to make a full, accurate, and truthful inventory of the assets of the deceased, in which he was bound to set forth all demands against himself due the intestate. An inventory was made in this case, and verified by the administrator in the manner required by law; and in it, he enumerated, among the assets, a demand against himself, in the following form :

"*Due Bill against John Lloyd,* $21.00."
"(Not dated.)"

There is no note or entry in the inventory, setting forth that he had any set-off or defence to the demand. The form of this due-bill, and the time of its delivery, are subjects of proof. It passed into the hands of the administrator with the other effects, but is shown to be lost. It appearing that it was executed and delivered by him shortly before the death of the intestate, and subsequent to the date of the last item of his account, he attempted to preclude the legal presumption of a settlement of all prior matters between him and the deceased, arising from this circumstance, by showing that the due-bill, on its face, purported to have been given for wheat. But the testimony for this purpose was unsatisfactory and insufficient; and so far as this point is concerned, the inventory was not changed, and the presumption unaffected, and is applicable to the whole demand of the claimant. Independent of this presumption, however, I think that the omission of the administrator to make any claim of set-off or defence to the due-bill in the inventory, of which no explanation has been given, is evidence against him. An inventory is the act of an executor or administrator, to the correctness of which he is sworn, particularly as to all claims against himself belonging to the estate. It is unnecessary, in this matter, to decide that if an administrator or executor should inventory a demand against himself, without making any claim of defence to it in the inventory, he would be estopped from setting up a defence in bar to the same, like payment, satisfaction, &c., which operate to dis-

charge or extinguish the demand. But it does not admit of a question that, unexplained, such an omission would be conclusive evidence against the administrator. There is a difference, however, between such a defence and a set-off. The administrator is not at liberty to adjust and apply such a demand in abatement of a claim of the estate against him, but must, either on final settlement or in a special proceeding before the surrogate, prove the set-off; and therefore, in such a case, this omission would have less weight. Still, I cannot but regard it as evidence showing that, at the time this inventory was made, the administrator did not think of setting up a claim against the note or the estate. It seems to me that no man acting in this capacity, while setting forth a demand against himself to which he had a legal or equitable defence, would fail to qualify it in some form by a statement of his claims against it. On returning the inventory, he made oath, in accordance with the statute, that this demand was a "just claim" of the estate against him to its amount, in the full knowledge that this court possessed jurisdiction to determine all legal and equitable defences to the same in his behalf, on a final accounting, or on proceedings before final accounting, in which the inventory would be evidence against him; and yet he failed to accompany it with any counter-claim whatever. This neglect on his part, while thus engaged as a trustee, in presenting the true condition of the estate committed to his care, to set forth a matter necessary to a full understanding of it, has a significance which ought not to be overlooked, especially as an unfavorable interpretation of it is in entire harmony with all the acts and declarations of the administrator as to this demand, and the other testimony in this case.

With all this direct and circumstantial evidence against it, I have no hesitation in rejecting the whole account, and adjudging the amount of the due-bill, with interest, a valid debt against the administrator.