NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JANUARY, 1877.

## SHEERIN *v.* PUBLIC ADMINISTRATOR.

*In the matter of the Estate of* JOHN SHEERIN, *deceased.*

On the question whether the administrator was negligent in leaving testator's deposit in a savings bank, after the bank had suffered from "a run" until it finally became insolvent;—*Held*, that testimony of witnesses as to distrust expressed by depositors and others, was not sufficient to establish such general reputation for unsoundness as would raise a presumption of knowledge of its unsound condition on the part of the administrator, where all the witnesses who knew of its reputation and course of business, testified that they had confidence in it up to the time of its failure.

The object of the statute (2 R. S. 126 § 36,) requiring the public administrator to deposit all moneys by him "collected and received," within two days after the receipt thereof in an officially designated bank, is to secure the funds against loss by conversion by the administrator, or his indiscreet selection of a bank.

A bank deposit made by the decedent, whose book, only, comes to the hands of the administrator, is not money "collected and received," by him, within the meaning of the statute.

An administrator is bound to use such care and diligence as a business man would exert in the management of his own property. He is not liable for a loss occurring notwithstanding such care.*

The fact that a bank deposit was inventoried as cash, does not conclude the administrator and throw upon him absolute responsibility for the security of the fund.

The inventory may be shown to be incorrect, on a final accounting.

---

*As to the liability of the city for the acts of the public administrator, see *Glover* v. *Mayor, &c., of N. Y.,* 7 *Hun,* 232 ; as to who is entitled to interest upon deposits made by public administrator, see *Sullivan* v. *Herrera* (7 *Hun,* 309).

THIS was a proceeding for the final settlement of the accounts of the public administrator, in the matter of the estate of John Sheerin, deceased.

The public administrator filed his account of proceedings in this estate, and objections to the account were filed, and the matter was referred to an auditor who made his report, and the public administrator filed exceptions thereto. The exceptions material to the decision were, 1, to a finding of the auditor, that the public administrator should be charged with $443.88, deposited in the Third Avenue Savings Bank, and with interest thereon; and, 2, to a finding of fact, in respect to the repute of said bank, and the public administrator's negligence in failing to withdraw the deposit from the bank. The alleged dereliction occurred under the administration of the late public administrator, Isaac Dayton, Esq.

The evidence showed that the deceased died April 22d, 1875, about which date his assets, which included two bank books, one in the Emigrant Industrial Saving3 bank for $1,399.16, the other in the Third Avenue Savings Bank, amounting to the sum of $443.88, came to the public administrator's hands. On the 29th day of September, in the same year, the latter bank failed, and it paid only a portion of the deposit, to wit: $66.49, and the balance, $377.39 was now assumed to be uncollectible.

Some proof was offered in respect to the reputation of the Third Avenue Savings Bank, in respect to solvency.

Christain H. Betjerman, an attorney, testified that the reputation of the Third Avenue Savings Bank was bad, since the run on it about a year previous to its suspension. On cross examination, he testified that he had never inquired of the officers of the bank, as to its solvency; that it continued to do regular business; he never heard of its being unable to meet its obligations; never saw the

annual report submitted in January, 1875. He derived his information from conversations with depositors, and people who wished to deposit money. One John Bush, a carman, told him he would take his money out from the bank; that one of the directors advised him not to do so; that in conversation with one Mrs. McCann, she stated she was a depositor, but she should draw her money from the bank, as she had heard that since the run, depositors were withdrawing, but he didn't believe she did withdraw her account; that he didn't remember any other depositors; that he conversed with Mr. Lessor Friedberg in the summer of 1875, who had some money he wished to invest; that witness advised him to put it in a savings bank and mentioned the Third Avenue Savings Bank; he said he would not trust the Third Avenue Savings Bank; that witness had an impression it was insolvent from the first run. On re-direct, he testified he had conversations with his father, whose opinion was the same as his.

Edward Timpson, called for the Public Administrator, testified that he knew about the Third Avenue Savings Bank; that there was a run on it some years ago, and afterwards it was all right again; that he didn't remember that the newspapers published articles about the Bank; that he heard it was drawing in its mortgages during the first run.

Richard C. Beamish, a witness called for the Public Adminstrator, testified that he lived near the Third Avenue Savings Bank many years; was a depositor at the time of its collapse; remembered the first run, had five or six thousand dollars in it, but did not withdraw it; that the reputation of the bank was good at the time, and afterwards; thinks the first run was four years ago; knew several directors; that his faith was not shaken in the bank, on account of the run.

Some testimony was given, showing that the intes·tate left his deposit in the Emigrant Industrial Savings Bank, to accumulate, and he was in the habit of withdrawing such funds as he needed from the Third Avenue Savings Bank.

L. H. ARNOLD, *for the public administrator.*

R. P. HOPE, *for the next of kin.*

THE SURROGATE.—I am satisfied that the referee erred in finding that the general reputation of the Third Avenue Savings Bank, for solvency, was bad at the times mentioned. The testimony given upon that subject seems to fall very far short of establishing a general reputation, which would raise a presumption of a knowledge of its unsound condition on the part of the Public Administrator. Indeed, on the evidence given before the auditor alone, I should not hesitate to find that the bank was in good repute in respect to its solvency, for it had withstood a very severe run upon it,—paid the demands, and continued its business; and those witnesses who were sworn, and knew of its reputation, and course of business, had confidence in its entire solvency, up to the time it finally suspended. But the first question for consideration in this matter is, as to the effect of the statute relating to the duty of the Public Administrator and the deposit of moneys by him " collected and received." By section 36, of 2 *Statutes at Large,* 130, it is provided that the Public Administrator shall deposit all moneys by him " collected and received" within two days after the receipt thereof, in such bank as the common council shall designate, to the joint credit of himself, and the comptroller. It is claimed by the counsel for the objector, and approved by the finding of the referee, that the receipt by the public administrator of the bank book showing the deposit in

the Third Avenue Savings Bank, was money "collected and received," within that provision, and that it was his duty to have deposited the same in the Park Bank, which has been duly designated according to the statute, and that for that neglect he is liable to the estate for any loss resulting from non-compliance with that statute. The object of this statute undoubtedly is, to secure the safety of funds belonging to an estate which shall come into the hands of the Public Administrator, so that he may not use them for his own purposes, or deposit them in an unsafe bank, at his own discretion, and I am quite clear in the opinion that the fund deposited in the Third Avenue Savings Bank by the intestate, and evidenced by his bank book, did not, within any legitimate construction of the words, constitute moneys by him "collected and received." It had never been in his hands, and his having the means to draw it, cannot be even a constructive collection or receipt. If it were, then on presentation of the bank book, if the bank had declined to pay, and suspended the next day, the Public Administrator would be held to have collected what might in fact be an entirely worthless claim of the estate.

I entertain no doubt that the referee has fallen into an error in holding that the Public Administrator was liable for failing to deposit the money which was in the Third Avenue Savings Bank, in the Park Bank, within two days after his receipt of letters ; and that the money was never in the hands of the Public Administrator so that the same could have been deposited.

The next question to be considered is, whether the Public Administrator was guilty of neglect under the circumstances of this case, for his failure to draw the from money the Third Avenue Savings Bank before its suspension.

An administrator is bound to use such care, and dili-

gence as a business man would exert in the management of his own property, in order to collect claims against debtors of the estate (*Moor's estate*, 1 *Tucker*, 41).

In *Thompson* v. *Brown* (4 *Johns. Ch.*, 619) Chancellor KENT holds that executors and administrators acting in good faith, and without any wilful default or fraud, will not be responsible for the loss which may arise. (See *Schultz* v. *Pulver*, 11 *Wend.*, 361; *Ruggles* v. *Sherman* 14 *Johns.*, 446.) In discussing the question of a *devastavit* by an executor, *Williams on Executors* lays down the rule that an executor is not guilty of a *devastavit* provided he exercised fair and reasonable discretion on the subject. (See *Barn. & Ald.*, 360; *Williams on Executors*, 1539.)

In *Whitney* v. *Peddicord* (63 *Ill.*, 249), Chief Justice LAWRENCE, in discussing a kindred question, says: "When they have acted with reasonable diligence, and honest desire to do their duty faithfully, a mere error of judgment, in what was fairly a matter of judgment, or opinion, could not make them liable, merely because subsequent events have shown they did not pursue the wisest course; but on the other hand, they must be held to that degree of diligence which men ordinarily use in the management of their own affairs, and if through lack of that, the interests of the trust estate are damnified, they must make good the loss."

The case cited by counsel for the objector, *Cornwell* v. *Deck*, 8 *Hun*, 122, does not militate against the authorities and principles above cited. That was a case where the administratrix had kept money of the estate in a trunk, in a bed room occupied by her son, adjoining the store, for nearly a year from whence it was stolen, and the court held that, had only a portion of the money collected necessary for the use of the business been so kept, and the balance deposited in bank, it would not have rendered the administratrix liable; but in com-

menting on the case, Judge SMITH cites, with approbation, the case of the *Chambersburg Savings Association's Appeal* (76 *Pa.*, 203), where it is stated that it is well settled that a trustee shall not be surcharged by a court of equity for a loss which has occurred, in case he has exercised common skill, common prudence, and common caution ; but for supine negligence, and wilful default, he shall be held responsible. It is also urged by the counsel for the objector that the inventory filed by the public administrator, stated the amount of money in said bank to be assets, and in cash, and that he is estopped by his inventory. In this position he is clearly in error, for it often occurs that on a final accounting the inventory may be shown to be incorrect, and so be corrected in the final decree. (See 2 *R. S.* 440, §§ 14, 15·; *Montgomery* v. *Dunning*, 2 *Bradf.*, 220).

Having concluded from the evidence that there was no such general reputation of insecurity, on the part of the Third Avenue Savings Bank, as charged the Public Administrator with knowledge of that fact, and as it nowhere appears that he in fact knew of any suspicion in respect to it, and as the investment was made by the intestate, I am unable to find from the evidence that the Public Administrator was guilty of any negligence in permitting the fund to remain on deposit in that bank, for the time stated, or that he failed to take such care of the fund, as men of ordinary prudence would take of their own affairs.

This case is one of considerable interest and importance, not on account of the amount involved, but because it affects the conduct of a every responsible public officer ; and for that reason I have felt it my duty to consider the question involved, with considerable care, with a desire, on the one hand, not to relax the rule of responsibility on the part of the Public Administrator,

and on the other, not to impose any such burthens as would either deter a competent and careful person from assuming its responsibilities, or imposing unjust liability upon him in the performance of his trust; and it seems to me that the rule adopted by the auditor in this case, would impose burthens entirely inconsistent with the nature of the office, and the trust reposed in him, and would, carried to its legitimate conclusions, render it impracticable to procure any competent and responsible person to accept the office.

In the consideration of this matter, I have weighed the distinction which properly grows out of the English doctrine and practice, denying executors and administrators compensation for their services, and that which prevails in this country, of compensating by commissions for such services, and the different responsibility which attaches by reason of the changed condition of the trust; but on such examination as I have been able to give the facts of this matter, and the authorities bearing upon the subject, I am unable to concur with the auditor in his conclusions.

I am of the opinion that in respect to the fund in the Third Avenue Savings Bank, the account should be settled as stated, and that the report of the auditor in that particular should be modified.

Decree accordingly.