NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
April, 1881.

GREENHOUGH v. GREENHOUGH.

*In the matter of the estate of* CHARLES B. GREENHOUGH,
*deceased.*

The surrogate's court has no power, upon an application to amend an inventory of a decedent's estate, to determine the ownership of property, the title to which is disputed. Accordingly, where the applicant seeks to have inserted, in an inventory filed, property which the executor or administrator claims, under oath, as belonging to himself, the motion should be denied.

Sections 2715 and 2716 of the Code of Civil Procedure, have not changed the statutory requirements as to the contents of an inventory.

THIS was a motion on the part of Charles E. Greenhough, an infant under fourteen years, by James Dawson, his general guardian, to compel Martha S. Greenhough, the widow and administratrix of the estate of decedent, to insert certain property in an inventory of the estate, filed by her.

The affidavit of James Dawson set forth facts showing the infant's interest, etc. ; the filing of an inventory, January 15, 1881, wherein the property of the estate was appraised at $368,074.02 ; and that decedent was possessed of property not included in the inventory, viz. :

upwards of two thousand shares of stock of the Botanical Garden Railway Company, a corporation doing business in Rio Janeiro.

Upon the return of an order to show cause why the administratrix should not inventory this stock, she presented an affidavit, to the effect that decedent was, at one time, owner of certain stocks of said railway, but that, some time before his death, he made a valid gift and transfer thereof to her, and, at the time of his death, did not own the same.   Other affidavits were presented.

W. H. FIELD, *for the motion.*

BUTLER, STILLMAN & HUBBARD, *for the administratrix.*

THE SURROGATE.—This motion raises distinctly the question whether the Surrogate should require an executor or administrator to include, in an inventory, property which is alleged to have belonged to decedent, notwithstanding the inventory first filed, duly verified, and the subsequent oath of the representative,—on a motion to amend the inventory by inserting such property,— that the former inventory embraced all the property of the decedent, and that that stated in the moving papers did not belong to the decedent, but was the property of the representative.

In Thomson v. Thomson (1 *Bradf.*, 24), Judge BRADFORD discusses this question under the English authorities, and concludes that where the answer confesses more assets, the court may order the inventory to be amended ; but if further assets are not admitted, proof will not be received to contradict the answer, because the inventory is required to be under oath, and the court cannot order assets to be inserted in the inven-

tory without the party's oath, nor can it compel an executor or administrator to swear to assets, the possession of which he has twice already denied, viz. : once in the inventory, and again in the answer denying the allegation. And the learned Surrogate says : " If this be the rule with the English courts, which claim jurisdiction independently of the statute, *a fortiori*, it ought to prevail here, where the matter is regulated to a minute degree by statute, and where no mode has been provided for impeaching the inventory, though a further inventory may be ordered of assets subsequently discovered."

The same principle is recognized in Lloyd *v.* Lloyd (1 *Redf.*, 399), and such has been the uniform practice in this court ; but my attention has been called to the case of Young *v.* Young (Gen. Term, 3d Dept.), wherein the Surrogate of Sullivan county, on an application to require an administrator to amend his inventory, and insert certain bonds, and the answer of the administrator that said bonds were not the property of decedent at the time of his death, and did not form any part of his estate, assumed to take testimony, and to determine the question as to the ownership of the bonds, and also to direct the administrator to insert the same in his inventory, from which order or decree an appeal was taken to the general term, which modified the decree by striking out all findings of fact and law contained therein, and ordered that the decree be amended by adding, at the end thereof, that the decree or order was without prejudice to any claim or right of Young (the person claiming the bonds) to the same, which claim or demand the administrator was at liberty to state in his inventory thereof if he chose so to do, and to prosecute and have deter-

mined in any court having cognizance thereof. Judge BOARDMAN, in delivering the opinion of the court, on that appeal, says/that "the regularity of the proceedings for compelling the administrator to inventory the bonds in question, is not before us, and will not be considered. We may remark, however, in passing, that the acting Surrogate showed an eager, if not undue desire to have the bonds so inventoried that the administrator would be estopped from alleging ownership of them." Again, after reciting the reversal of the order, he says: "But, for the purpose of the identification of dates, amounts, etc., the order to put a description of the bonds on the inventory, without prejudice to the rights of the two brothers, and expressing the nature and extent of the claim, was permitted to stand. That was going very far in guarding the rights of the contestants."

It is too plain for argument that the Surrogate, on such an application, and upon affidavits, has no power to determine the ownership of the stock in question, and it is equally clear that the object of an inventory is in no way subserved by the insertion of property alleged to belong to the decedent on the one side, and denied on the other, where, as in the case of Young, it is permitted to stand, so to speak, under protest; for in such a case, the inventory in respect to such stock would not be presumptive evidence against the administratrix, making the inventory, and I can conceive of no beneficial result from such an entry, except perhaps record evidence of the dispute. I am of the opinion that a departure from the present practice would subject Surrogates to such fruitless proceedings, in almost every case, and that the

mischief resulting therefrom would greatly exceed the benefits derived from such continual insertion of property thus disputed in the inventory ; and I am inclined not only to concur with Judge BOARDMAN, in his opinion in the Young case, that it was going very far in guarding the rights of contestants, to require such entry, but that it was a palpable violation of the uniform practice hitherto prevailing, and a departure from the theory and purpose of an inventory.

As the parties interested may test the question of ownership on the judicial settlement of the representative's account, nothing by way of interest or safety can be lost ; for if the stock were inserted in a qualified way, as in the case of Young, it could not add a particle to the intermediate security of the parties, since it might be disposed of in the meantime, just as well as though not inserted, and the present showing would entitle them to protection to the same extent as though the stock were duly entered in the inventory.

The Code has not changed the requirements or contents of an inventory, as sections 2715 and 2716 only provide the method of compelling the return of an inventory ; and the use of the words "or a sufficient inventory" do not purport to enlarge such requisites, as the commissioners state the source of the first to be sections 17 and 18 of 2 *R. S.*, 85, and of the second, section 22 of said statute, 86.    The motion must be denied.

Ordered accordingly.