New York County.—Hon. D. G. Rollins, Surrogate.—April, 1886.

Vogel *v.* Arbogast.

*In the matter of the estate of* Philip Arbogast, *deceased.*

The statutes (2 R. S., 82, § 2, *et seq.*, and Code Civ. Pro., § 2715) regulating the proceedings for the preparation and return of inventories, do not contemplate interference, by legatees or next of kin of a decedent, with the action which executors and administrators, aided by appraisers, are required to take.

The proper practice, under Code Civ. Pro., is to postpone, until an account-

ing, all disputed questions respecting the existence or valuation of a decedent's assets.

Therefore, where, after the entry, upon the application of administrators, of an order directing an appraisal of such of decedent's assets as had come to their knowledge, the next of kin asked that they be required to produce certain papers for the assistance of the appraisers, and the administrators alleged that they had already submitted to the appraisers a true and full statement of all the assets,—

*Held*, that the issues thus raised could not then be brought to trial, and that the relief sought should be refused.

MOTION by Julia Vogel and others, next of kin of decedent, for an order directing George P. Arbogast and others, administrators of his estate, to produce papers on appraisal.

A. J. DITTENHOEFER, *for the motion.*

HAL BELL, *for administrators.*

THE SURROGATE.—Upon the application of the administrators of this estate, the Surrogate lately made an order directing an appraisal of such assets left by the decedent as had come to the knowledge of the applicants. A motion is now made on behalf of certain of the next of kin for an order directing the administrators " to produce on the appraisal all the papers of said deceased, of any nature whatever, and especially any list of personal estate which the decedent may have left in his safe, and any paid up checks returned to deceased by his bank of deposit, or any check books, in order that the appraisers may, by examining the same, determine the amount of the assets of the estate and the amount of advancements made by the deceased to his children and children in law." The various allegations contained in the papers

presented by the moving parties in support of their application are denied in the answering affidavits submitted by the respondents. The administrators expressly declare that they have already submitted to the appraisers a true and full inventory and statement of all assets, moneys, mortgages, stocks, bonds, claims and demands belonging to the estate.

Under these circumstances I must decline to grant the order prayed for. It is not contended by the applicants for that order that there is any express provision of statute which requires or authorizes the Surrogate to make it. The written laws which regulate the proceedings for the preparation and return of inventories do not seem to contemplate any interference by legatees or next of kin with the action which executors and administrators aided by appraisers are required to take.

The representative of the estate must act upon his own responsibility, and under the sanction not only of his official oath, but of a special oath which he is required by law to take in verification of the accuracy of his inventory. It is manifest that the granting of this motion would be of no legitimate practical advantage to the applicants, unless it would enable them to try issues with the respondents respecting the correctness of such inventory as may hereafter be filed. Can such issues be brought to trial?

The statutory provisions pertinent to this subject may be found in title 3, chapter 6, part 2, of the Revised Statutes (3 Banks, 7th ed., 2293), and in § 2715 of the Code of Civil Procedure. By § 2 of the title above named, every executor or administrator is en-

joined, within a reasonable time after qualifying, to make—with the aid of appraisers appointed by the Surrogate—a true and perfect inventory of all the goods, chattels and credits of his decedent.

Section 4 provides that the appraisers shall take and subscribe an oath that they will truly and impartially appraise the personal property which shall be exhibited to them.

Section 5 directs that the appraisers shall, at a time and place previously fixed upon and proclaimed, proceed to estimate such property, and to set down each article thereof in the inventory with a statement of its value.

Section 16 requires that the inventory returned by the executor or administrator shall be verified by the oath of its maker that it is " in all respects just and true," and " contains a true statement of all the personal property of the deceased which has come to the knowledge of such executor or administrator."

By § 2715 of the Code, a creditor or person interested in a decedent's estate may present to the Surrogate's court proof by affidavit that its executor or administrator has failed to return an inventory or a sufficient inventory, and, if the Surrogate is satisfied that such executor or administrator is in default, he must make an order requiring the delinquent to return such inventory, or such further inventory, as the case may be.

The section of the Code above cited is, so far as concerns the matter now under discussion, a mere consolidation of certain repealed provisions of title 3, *supra,* and has not in any manner enlarged the respon-

sibilities of executors and administrators; or the rights
and privileges of creditors, legatees or next of kin,
as regards the making and filing of inventories
(THROOP's Code, § 2715, note; Matter of McIntyre, 4
*Redf.*, 489; Greenhough v. Greenhough, 5 *Redf.*,
191).

Now, before the enactment of the Code, it was set-
tled by numerous decisions that a sworn inventory
could not, in a proceeding, for that purpose, be falsi-
fied; that when its maker came to his accounting, it
was competent for the parties in interest to prove that
he had not charged himself with all the property that
had reached or should have reached his hands, or with
the true value thereof; but that the Surrogate was
not authorized to receive evidence impeaching an in-
ventory, which, in the face of allegations tending to
dispute its correctness, the executor or administrator
had under oath pronounced to be just and true (Thom-
son v. Thomson, 1 *Bradf.*, 24; Montgomery v. Dun-
ning, 2 *Bradf.*, 220; Waring v. Waring, 1 *Redf.*, 205;
Sheerin v. Public Adm., 2 *Redf.*, 421).

In Thomson v. Thomson (*supra*), Surrogate BRAD-
FORD, after a careful review of the procedure of the
English ecclesiastical courts, declared the rule to
be well established, that those courts, while they
would entertain an application for a corrected or ad-
ditional inventory, would not, in case the accuracy of
the inventory already filed were reasserted on oath
by the executor or administrator, receive evidence
tending to falsify it. It was only in case the allega-
tions of the applicant for a new or amended inventory
were admitted or were not disputed that the courts

would order the filing of another. By the English practice, an inventory was required, as it is here required by statute, to be verified by the oath of the executor or administrator. It could not, therefore, be received without such verification, and manifestly its maker could not be compelled to swear to the truth of an amendment or addition which in substance he had twice denied under oath. The only course, therefore, was to postpone until the period of accounting all disputed questions respecting the existence of assets or their valuation. It might then be shown that property had been omitted from the inventory which ought to have been included therein, and that assets had yielded or should have yielded a larger sum than the value at which they had been appraised.

This I hold to be the proper practice under the Code. Motion denied.