pressly excluded by the language of the will, the time spent by a piece worker who subsequently became a salaried employé should also be excluded. Unless this interpretation of intention be given effect it would be possible for a piece worker, who had worked in that capacity for 20 years and had been a salaried employé one week immediately prior to decedent's death, to receive a bequest of $2,500, under paragraph 3 of clause 7 of the will, although the testator expressly states that such legacies are not to be paid to piece workers.

I will therefore hold that neither of the claimants is entitled to a legacy under paragraph 3 of clause 7 of testator's will.

Each of the executors will be allowed $36,322.13 commissions. No commissions will be allowed on the money received by the executors on account of the mortgage executed by them on real estate specifically devised.

Complete decree by inserting appropriate amounts.

---

(88 Misc. Rep. 359)

In re DONOHUE et al.

(Surrogate's Court, Saratoga County. December, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 91*)—MANAGEMENT OF ESTATE—DUTY OF EXECUTOR.

Executors should take all measures which a prudent man ought to take to make the corpus of the estate yield a fair return to the life tenant and preserve it for the remaindermen.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 397, 398, 400–402; Dec. Dig. § 91.*]

2. EXECUTORS AND ADMINISTRATORS (§ 102*)—INVESTMENT OF FUNDS—SECURITIES.

The rule that an executor holding funds for investment must put them in government or real securities is modified, to the extent that such other securities may be held as the Legislature authorizes.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 420; Dec. Dig. § 102.*]

3. EXECUTORS AND ADMINISTRATORS (§ 91*)—RIGHTS OF RESIDUARY LEGATEES —DUTY OF EXECUTOR.

An executor must preserve the rights of a residuary legatee of a trust fund as well as those of a life tenant.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 397, 398, 400–402; Dec. Dig. § 91.*]

4. EXECUTORS AND ADMINISTRATORS (§ 105*)—FUNDS OF ESTATE—INVESTMENT —DUTY OF EXECUTOR.

While an executor may properly retain funds of the estate in a bank for a reasonable time in which to seek an investment, such time is limited to the period in which a prudent and active man could find such investment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 399; Dec. Dig. § 105.*]

5. EXECUTORS AND ADMINISTRATORS (§ 105*)—FUNDS OF ESTATE—INVESTMENT —LIABILITY OF EXECUTOR.

A residuary estate was given to executors, in trust to invest and pay the income to the life tenant and at his death pay the principal to certain persons named. The executors sold certain of testator's realty, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made certain collections, and deposited the money in a private banking house of good standing, at the request of the life tenant, and left the money so deposited long beyond the time needed to find an investment therefor. *Held*, that the executors were liable for loss of the funds caused by failure of the bank.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 399; Dec. Dig. § 105.*]

Proceeding on the judicial settlement of the accounts of Margaret Donohue, executrix, etc., of Farrell Donohue, deceased, as executor of Philip Donohue, deceased, and James Meeker and another, as executors, etc., of Philip Donohue, deceased. Decreed according to opinion.

Rockwood & McKelvey, of Saratoga Springs (Lawrence B. McKelvey, of Saratoga Springs, of counsel), for executors.

O'Gorman, Battle & Vandiver, of New York City (Harold H. Corbin, of Saratoga Springs, of counsel), for contestant.

OSTRANDER, S. Philip Donohue, the testator, died November 11, 1887, at Waterford, N. Y. His will was proved March 31, 1898. Farrell Donohue, James Meeker, and J. W. Atkinson were appointed and qualified as executors. The residuary estate was given to the executors in trust to invest and reinvest and to pay the income to Farrell Donohue during his lifetime. The principal was given at his death to certain persons named, of whom contestant is one.

The executors from time to time sold certain real property and collected moneys due to deceased upon certain real estate mortgages and upon a chattel mortgage. The moneys thus obtained were, by consent of all the executors and trustees, deposited in the names of all the executors in the private banking house of D. Powers & Sons, at Upper Troy, N. Y. The amounts on deposit at divers dates in this account were as follows:

| | |
|---|---:|
| October 15, 1900 | $1,400 00 |
| May 8, 1901 | 1,790 00 |
| August 28, 1901 | 2,214 45 |
| January 13, 1902 | 2,214 45 |
| November 24, 1903 | 3,631 32 |
| April 28, 1904 | 5,906 85 |
| May 6, 1904 | 6,196 85 |
| September 23, 1904 | 4,196 85 |
| October 18, 1904 | 5,196 85 |
| April 16, 1908 | 4,660 56 |
| January 24, 1910 | 5,010 56 |

The withdrawal between May and September, 1904, of $2,000 was invested in a bond and mortgage. Interest on this bank account was at 4 per cent., and was taken by Farrell Donohue, the life tenant. This bank was in good repute and standing, and the deposits were made upon the full belief that the bank was entirely solvent and a safe institution.

The deceased had been accustomed to deposit his funds in it. Farrell Donohue had carried large amounts of his own and his wife's funds upon interest deposit in it. Farrell requested that the moneys of the estate be kept there, and was content to receive the rate of interest

paid by the bank for his life use. In view of his status as life tenant, this arrangement was acquiesced in by his coexecutors and trustees.

In June or July, 1910, the bank failed, and in consequence thereof $4,008.46 of the corpus of the estate was lost. Farrell Donohue, the life tenant, died November 11, 1912, and Margaret Donohue has qualified as his executrix. The representatives of Philip Donohue's estate have presented their account as such for judicial settlement and ask to be exonerated from the loss caused by the failure of this bank. This is opposed by Mary Ann Cahill, a residuary legatee, who insists that the loss was caused by failure of the executors to properly and safely invest the fund, and that for such loss they should be held liable. The executors claim that their acts were in good faith, prudent, and free from negligence, because of their belief in the solvency of the bank and its good standing in the community, and that their treatment of the fund was a proper and lawful management of the estate. I entertain no doubt of their sincerity and good intentions. All were men of high character and of undisputed honesty.

The various questions involved in this litigation have been very carefully and intelligently presented to the court at considerable length and with much learning and citation of authorities. It will be impossible in the limits of this opinion to discuss or even to allude to many of the authorities presented to and considered by the court. Ever since the cases recorded at verses 15, 24–27, of the twenty-fifth chapter of Matthew, there has been much controversy over the management of trust estates and the supposed harshness in some cases of the rules relating thereto.

Some questions are raised by the opposing counsel as to whether the course pursued with these funds was or was not an investment—one claiming that it was an unauthorized investment, and hence chargeable to the executors, and the other claiming that the executors had held the funds in a reputable bank and were guilty of no improper investment or negligence, and hence not liable for the loss. Whether the use of these funds was an investment or a failure to invest, the basic inquiry is: Were they prudently administered?

[1] It was the duty of the executors and trustees to take all the measures which a prudent man ought to take to make the corpus of the estate yield a fair return to the life tenant and to preserve it for the remaindermen.

[2] The rule, long firmly established by courts of equity and well settled in this state, is that a trustee holding funds for investment is bound to put them in government or real securities; but this rule is modified to the extent that such other securities may be held as the Legislature authorizes. King v. Talbot, 40 N. Y. 76; Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753; affirmed, 167 N. Y. 629, 60 N. E. 1123.

[3] That the life tenant was content with the deposit, and satisfied with the rate of income received, does not relax the rule in this case, since it was the duty of the executors to preserve the rights of the residuary legatees, as well as those of the life tenant.

[4, 5] While the law permits an executor or trustee to retain funds

in bank for a reasonable time in which to seek an investment, such reasonable time is limited to the period in which a prudent and active man could find such investment. In some cases 6 months have been held to be such reasonable time. Lent v. Howard, 89 N. Y. 169; Dunscomb v. Dunscomb, 1 Johns. Ch. 508, 7 Am. Dec. 504. In another case 18 months have been laid down as a just standard where no modifying conditions exist. Matter of Weston, 91 N. Y. 502, 510, 511. Much depends upon the facts surrounding each particular case. Under the circumstances of this case there was no question of temporary banking pending the liquidation of possible demands against the estate, or a more permanent investment; but this form of investment was chosen for carrying the fund. The trustees during several years selected and continued a manner of employing the fund which was neither recognized by the rules in equity nor by the statutes enacted in relaxation of those rules. The requirements in equity and the subsequent legislation are founded upon long experience and wise reasoning. Can it be said that one ignoring the requirements of these rules, approved by long years of practice, acted as a prudent man should act? Trustees departing from the safeguards cast about their charges by these salutary provisions of law do so at their peril. Worrell's Appeal, 23 Pa. 44.

It is an unpleasant duty to hold honorable and honest executors or trustees, acting for small compensation, with the best of motives, as in this case, liable for this very unfortunate loss; but the rule is founded in long experience and cannot be safely relaxed. The executors must be held to account for this loss.

Decreed accordingly.