In the Matter of the Estate of MEYER KRUGER, Deceased.[*]

Surrogate's Court, Kings County, April 22, 1931.

*Henry E. Coleman*, for the administrator.

*Carl J. Austrian* [*Warren C. Fielding* and *Leighton T. Wade* of counsel], for the Superintendent of Banks.

[*] See *Matter of Forrest* (140 Misc. 14).

WINGATE, S. From the days of the Evangelists, if not earlier, it has been recognized that one of the primary duties of a fiduciary is to make productive the fund in his hands and not to keep it "laid up in a napkin." (Luke 19:20–23; Matt. 25:14–28.)

This obligation has received repeated and universal recognition by the courts of this country since the earliest times, it being recognized that an executor or other representative who, through neglect, fails to obtain interest on funds in his hands, becomes personally liable for the equivalent. (*De Peyster* v. *Clarkson*, 2 Wend. 78, 87, 88; *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508, 510; *Blauvelt* v. *De Noyelles*, 25 Hun, 590, 592, 593; *Matter of Philp*, 29 Misc. 263, 264; *Matter of Katz*, 127 id. 16, 19; affd., 219 App. Div. 783; *Matter of Eddy*, 134 Misc. 112; *Shuttleworth* v. *Winter*, 55 N. Y. 624, 631.)

The Standard Dictionary (1930 ed.) defines "interest" as "an agreed or statutory compensation accruing to a creditor during the time that a loan or debt remains unpaid, reckoned usually as a yearly percentage of the sum owed."

That such is the invariable connotation of the terms when employed in this connection, is indicated by Bouvier's definition and citation of authorities (Bouvier L. Dict.) and the determinations of many courts. (*Hale* v. *Forbis*, 3 Mont. 395, 405; *Gardner* v. *Gardner*, 23 S. C. 588, 593; *Sorensen* v. *Central Lumber Co.*, 98 Ill. App. 581, 582; *Davis* v. *Rider*, 53 Ill. 416, 417; *Bank* v. *Walter*, 104 Tenn. 11, 15; *Whittemore* v. *Beekman*, 2 Dem. 275, 280; *Williams* v. *Scott*, 83 Ind. 405, 408; *Hubbard* v. *Callahan*, 42 Conn. 524, 528; *Dry Dock Bank* v. *Am. Life Ins. & Trust Co.*, 3 N. Y. 344, 355.)

The usual functions of an executor or administrator are payment of debts, marshaling of assets, conduct of the business of the testator, if authorized in the will, and distribution of the surplus property of the estate to those entitled. (*Johnson* v. *Lawrence*, 95 N. Y. 154, 162, 163; *Matter of Clinton*, 12 App. Div. 132, 137; *Matter of Union Trust Co.*, 70 id. 5, 9; *Matter of Abrahams*, 136 Misc. 538, 545.)

The reconciliation of these two sets of duties is to be effected in the light of the statement of the general obligations of fiduciaries as enumerated by the Court of Appeals respecting trustees, but which is equally applicable to executors or administrators: "the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs." (*King* v. *Talbot*, 40 N. Y. 76, 85.)

This statement is recognized as the universally guiding principle

respecting the conduct of testamentary and intestate fiduciaries. (*Adair* v. *Brimmer*, 74 N. Y. 539; *Deobold* v. *Oppermann*, 111 id. 531; *Matter of Wotton*, 59 App. Div. 584; *Hine* v. *Hine*, 118 id. 585; *Matter of Hall*, 48 id. 488; *Putnam* v. *Lincoln Safe Deposit Co.*, 87 id. 13; *English* v. *McIntyre*, 29 id. 439; *Matter of Lyall*, 212 id. 417; *Matter of Robbins*, 135 Misc. 220, 221, 222; *Matter of Leavitt*, Id. 387, 389.)

Obviously, since the retention of the funds of an estate by an executor or administrator is ordinarily a matter of short duration, the usual trustee's investment is unsuitable, which condition is emphasized by reason of the fact that ordinarily, the funds of the estate are collected at various times covering the period of incumbency and must be retained in a liquid condition for the payment of debts and distributive shares. This is especially patent in the frequent instance of the fiduciary being compelled to conduct or wind up a business of the decedent.

Under such circumstances, no business man would contemplate any employment of surplus funds other than their deposit in a bank. That in this particular the legal obligation of the fiduciary corresponds with the ordinary prudent practice of the community has many times been determined. Thus the court says in *Matter of Philp* (29 Misc. 263, at p. 264): "It is the duty of the temporary administrator to deposit the moneys which may come into his hands in a trust company, and on his failure or neglect so to do it is proper to charge him with such interest as would have been earned had the deposit been made."

This obligation is expressly or impliedly recognized in many cases, among which may be noted *Bischoff* v. *Yorkville Bank* (218 N. Y. 106, 111); *Sheerin* v. *Public Administrator* (2 Redf. 421, 427); *Matter of Donohue* (88 Misc. 359, 363); *Matter of Maxwell* (1 Con. 230, 238, 239); *Matter of Katz* (127 Misc. 16, 19; affd., 219 App. Div. 783); *People ex rel. Nash* v. *Faulkner* (107 N. Y. 477).

In the last cited case the court says (at p. 488): "He is merely the trustee or agent of the private parties interested in the money, and no greater or higher responsibility should be imposed upon him than would be imposed upon any agent or trustee. If he had been a trustee and had deposited this money in good faith, without any negligence on his part in this bank, its loss by the failure of the banker would have been a good defense. * * * if the administrators had deposited the money of their estate in this bank, in good faith, and without negligence they would not have been responsible for its loss."

The question then arises as to the nature of the deposit which the fiduciary makes with the bank and the resulting relations

between them. As was pointed out by the Supreme Court of the United States in *Marine Bank* v. *Fulton Bank* (2 Wall. 252, at p. 256): " All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand."

The latter relation, which, no doubt as a result of the fact that it is vastly more common, has been held to be presumed to exist (*Genesee Wesleyan Seminary* v. *U. S. F. & G. Co.*, 247 N. Y. 52, 55), is described by the Court of Appeals in *Baldwin's Bank of Penn Yan* v. *Smith* (215 N. Y. 76, at p. 82) as follows: " The relation of debtor and creditor, not of agent and principal, exists between a bank and its depositor. (*Ætna National Bank* v. *Fourth National Bank of N. Y., supra* [46 N. Y. 82]; *Jordan* v. *National Shoe & Leather Bank of N. Y.*, 74 N. Y. 467; *Straus* v. *Tradesmen's Nat. Bank*, 122 N. Y. 379; *Shipman* v. *Bank of the State of New York*, 126 N. Y. 318; *Cassidy* v. *Uhlmann*, 170 N. Y. 505.) The money deposited becomes a part of the bank's general funds. The bank impliedly contracts to pay its depositor's checks, acceptances, notes payable at the bank, and the like, to the amount of his credit. (*Citizens' National Bank of Davenport* v. *Importers & Traders' Bank of N. Y.*, 119 N. Y. 195.) But in discharging its implied obligation it pays its own money as a debtor, not its depositor's money as an agent."

The alternate relationship is depicted by the Appellate Division of this department in *Van Wagoner* v. *Buckley* (148 App. Div. 808 at p. 811), as follows: " A bailee acquires no title to the subject of a bailment, but has only the right to possession thereof, subject to the conditions imposed in the creation of the bailment, a possessory interest authorizing the defense of the right to such possession until the termination of such bailment.

" The fund so deposited with the trust company by direction of the aforesaid order never became its property and did not pass to the Superintendent of Banks when he took possession of the trust company, its assets and business, nor did he then acquire, as against the real owner thereof, any right to any property in custody of the trust company which it did not own. (*Corn Exchange Bank of Chicago* v. *Blye*, 101 N. Y. 303, 306; *First National Bank of Montgomery* v. *Armstrong*, 59 Fed. Rep. 62.) ",

It must be apparent, therefore, that such a bailment amounts merely to a physical custody for safekeeping, in like manner as if the particular currency which is its subject were locked in a safe deposit box. The basic nature of such an arrangement precludes the possibility of its use by the custodian, and, under the familiar principles hereinbefore noted, it is only the privilege of use which gives rise to the obligation to compensate by the payment of interest. Indeed, such service of caring for the property of another would, on usual principles, give rise to a presumption that the bailor is under obligation to make payment for the benefit conferred. *A fortiori*, therefore, any payment by the custodian to the bailor would be most anomalous, and if such payment is made by a bank, it would raise an extremely strong presumption that the arrangement was not a bailment but the ordinary banking relation described in *Baldwin's Bank of Penn Yan* v. *Smith* (*supra*).

But it is urged by counsel in the case at bar on the authority of *Matter of Forrest* (140 Misc. 14) that " The executor or other fiduciary is without authority to permit the title to the trust asset to pass from him to any person or corporation."

This court cannot adhere to such thesis, which it believes to be contrary to many of the fundamental obligations of such fiduciaries. Unquestionably he may not *unlawfully* permit title to pass, but he is under obligation to pass title in the very performance of his primary duties of paying debts and legacies, and his noted obligation to render the fund productive inevitably involves a surrender of title. He will not be permitted wantonly or negligently to pass title in a manner inimical to the interests of his *cestuis que trustent*, but to assume that the customary bank deposit, creating the relation of debtor and creditor, is such diversion, is to beg the question at issue.

In the opinion of this court the true rule is enunciated with especial clearness by the Supreme Court of the State of Kansas in *Phillips* v. *Yates Center National Bank* (98 Kan. 383, at p. 388) as follows: " In view of the manner in which business in this country is ordinarily conducted, the natural course to be pursued by the custodian of a fund to which additions are continually being made, and from which payments may be demanded at any time, is to place it on general deposit in a bank and check upon it as occasion arises. A special deposit is not necessarily any safer than a general one, and is usually regarded as more hazardous. To keep the money in his personal possession would often involve an unreasonable risk, and to place it in a safety deposit box, where that is available, involves too cumbersome a method of disbursement to be at all in keeping with modern customs. We do not

think the legislature must be regarded as intending that all funds in the hands of custodians charged with their safe keeping must be withdrawn from circulation unless the statute expressly authorizes their deposit in a bank."

The State of New York, in consequence of its stringent laws regulating banking activities, has fortunately been comparatively free from questions of the nature here involved. As a result, adjudications of our courts respecting the nature of the relationship between a fiduciary and the bank in which he places the estate money are comparatively rare. With the exception of *Matter of Forrest* (*supra*) their uniform purport has been to declare that in the absence of clear, express contrary stipulation or agreement, the usual banking relation of debtor and creditor was constituted. (*Matter of Fox*, 104 Misc. 43, 44; *Matter of Vickery*, 106 id. 459, 460; *Ætna National Bank* v. *Fourth National Bank*, 46 N. Y. 82, 85; *Matter of Wasserman*, 140 Misc. 174.) (See, also, *Matter of Franklin Bank*, 1 Paige, 249, 253.)

Unfortunately, some of our sister States have been less happy in their banking regulations, with the result that their courts·have been called upon to determine such questions on many occasions. Their results are substantially uniform to the effect that the deposit of identified trust funds with a bank creates only the usual banking relation.

Thus, in *Fletcher* v. *Sharpe* (108 Ind. 276) the Supreme Court of that State says of an administrator's deposit of estate funds in a bank which subsequently failed (at p. 280): " There is no question but that the fund was properly deposited. The propriety of the conduct of the trustees in making the deposit, or of the bank in receiving it, is not in dispute. * * *

" When deposits are received, unless they are special deposits. they belong to the bank as part of its general funds and the relation of debtor and creditor arises between the bank and the depositor. This is equally so whether the deposit is of trust moneys, or funds which are impressed with no trust, provided the act of depositing is no misappropriation of the fund. * * *

" In this case, where no impropriety is imputed to the bank in receiving the money, it became the debtor of the petitioners, and its debt to them was of the same character as its debt to any other depositor, and must be paid in the same proportion."

Determinations to like effect may be found in the following additional cases: *Minard* v. *Watts* (186 Fed. 245, 246, 247); *Matter of Nichols* (166 id. 603, 604, 605); *Clisby* v. *Mastin* (150 Ala. 132); *Fletcher* v. *Sharpe* (108 Ind. 276); *Brown* v. *Sheldon State Bank* (139 Iowa, 83, 90, 91); *McAfee* v. *Bland* ([Ky.] 11 S. W. 439, 440);

*Board of Education of Detroit* v. *Union Trust Co.* (136 Mich. 454, 457); *Murphy* v. *Nett* (51 Mont. 82; 149 Pac. 713, 715); *Swartwout* v. *Mechanics Bank* (5 Dem. 555); *Shute* v. *Hinman* (34 Ore. 578, 581); *Miller's Appeal* (218 Penn. St. 50, 53); *Phillips* v. *Yates Center National Bank* (98 Kan. 383, 386); *Fidelity, etc., Co.* v. *Queens County Trust Co.* (174 App. Div. 160); *City of Sturgis* v. *Meade Co. Bank* (38 S. Dak. 317; 161 N. W. 327, 329); *Thompson* v. *Orchard State Bank* (76 Colo. 20; 227 Pac. 827); *Pethybridge* v. *First State Bank* ([Mont.] 243 Pac. 569, 571, 572); *Gray* v. *Elliott* ([Wyo.] 255 id. 593, 594); *Cato* v. *Mixon* ([Ga.] 140 S. E. 376, 378); *Andrew* v. *Citizens' State Bank* [(Iowa] 216 N. W. 12).

On reason and authority, therefore, this court determines that in the case of fiduciary as well as private funds deposited in usual course in a bank, there is a presumption that the relation of debtor and creditor is constituted, which presumption becomes exceedingly strong where the arrangement with the bank contemplates the payment of interest. This presumption may be rebutted by a demonstration of understanding or express condition effecting a bailment, but in the absence of such showing, will prevail, and will preclude a summary recovery against the bank or its liquidator or receiver.

The court refrains from the expression of any opinion as to whether such a deposit may or may not be entitled to a preference in the usual liquidating process, as this is a question for the determination of the particular Supreme Court in which the liquidation is conducted. (Banking Law, § 78, as amd. by Laws of 1930, chap. 678.)

The facts of the present application, taken most favorably to the moving party, are that the administrator of the estate of Meyer Kruger, on July 3, 1930, opened an account for the estate with the Bank of United States in which, at the time that institution passed into the hands of the Superintendent of Banks, there was a credit balance of $4,767.77. Subsequent to the suspension, this sum was demanded and present payment refused. The moving party here seeks an order directing the Superintendent of Banks to pay over this sum.

In view of the considerable number of similar applications which have been made and contemplated, the court has considered the application on the merits in spite of the fact that a motion is an improper manner of raising a question in a proceeding which is not already pending before the court.

For the reasons given, the motion is denied. Enter order on notice accordingly.