John D. Bennett, S.
It often serves a useful purpose to reiterate fundamental rules of conduct that should guide a fiduciary, and this accounting by an executor provides such an *568 opportunity. The rule applicable here was mentioned by the learned Surrogate Wingate 36 years ago when he said: “ From the days of the Evangelists, if not earlier, it has been recognized that one of the primary duties of a fiduciary is to make productive the fund in his hands and not to keep it ‘ laid up in a napkin’ ” (quoting from the Scriptures and citing many New York authorities in Matter of Kruger, 139 Misc. 907, 908).
Here the executor-trustee collected the bulk of the estate from two savings accounts of almost $13,000, deposited the money in a commercial banking account, and never invested or deposited it to earn interest. Answering the criticism of the guardian ad litem, the fiduciary states that he ‘ ‘ felt that it was a prudent and reasonable act to deposit these funds in a commercial account ’ ’ because he was unacquainted with possible estate debts and he wanted to keep them accessible in case they were needed; also, that he wanted checks to serve as receipts for any payments that might have to be made. He argues further that he should be excused from any duty to invest the funds for at least seven months, that being the period for the filing of possible claims.
The executor is not accused of bad faith or of using the funds for his own purposes. It does appear, however, that he also was appointed in the will and qualified as trustee. He, of course, must have foreseen that he would be acting as trustee for many years after this accounting, until all of the eight infant beneficiaries reach their majority. Their ages now range from 2 to 19 years.
This duty of a fiduciary to make the fund productive depends, naturally, upon the exigencies of each situation and applies to all fiduciaries. As mentioned by Surrogate Wingate in Matter of Kruger (supra), the retention of funds of an estate by an executor is ordinarily a matter of short duration, but the executor here could well have contemplated continuing his duty under the trust to invest the funds and keep them invested for a long period subsequent to this accoimting so as to provide income for the use and benefit of the infant beneficiaries. It was his duty ‘ ‘ to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs ” (King v. Talbot, 40 N. Y. 76, p. 85-86). This was a simple estate with no business of the decedent tó be wound up or such similar situations which complicated the fiduciary’s problems in many of the reported cases. Even were the executor to contemplate only a short duration of administration, as Surrogate Wingate said in Matter of Kruger (supra, p. 909): “no business man would contemplate any employment of surplus funds other than *569 their deposit in a bank. That in this particular the legal obligation of the fiduciary corresponds with the ordinary prudent practice of the community has many times been determined. ’ ’
It is the duty of a fiduciary to invest the funds profitably under penalty of personal liability, and the retention of money uninvested beyond a reasonable time places the burden of explanation and justification upon the representative when he accounts. Where failure to invest was based upon the representative acting in good faith he was charged only with simple interest, whereas in gross negligence he may be charged with compound interest (4 Jessup-Redfield, Surrogates’ Law and Practice, § 3870 and cases there cited).
Referring to one of the old cases, decided in 1815, which applied precisely the same rule (Dunscomb v. Executors of Dunscomb, 1 Johns. Ch. 508), the Chancellor said that the rule is founded in justice and good policy, prevents abuse and indemnifies against negligence. He required the defendants in that case to pay interest and said that in such a case of negligence in suffering the money to lie idle there did not appear to be any absolute rule as to time from which interest was to be computed. He pointed out then (and the rule is the same today) that “ the time must vary according to circumstances ’ ’; and upon the facts there he ruled that: “It would be laying too heavy a hand upon executors, to charge interest from the moment money was received.” While in that case the Chancellor considered six months to be proper because of a like ruling in another case, under the civil law examination of many cases decided in our courts since then it appears that the so-called “ seven-month rule ’ ’ for claims of creditors to be filed has no direct bearing-other than in the consideration of the question: What was the reasonable time under the circumstances of the particular case, and had any creditors presented claims ?
In the case now before this court the executor might well have considered, immediately upon the receipt by him of the bank account proceeds, that the fund would be needed to produce continued income for these infants for a great many years to come, subject of course to the expense of this accounting and the deduction of his fees and commissions.
Because of the obvious good faith of the executor, the court will not lay ‘1 too heavy a hand ’ ’ upon him. The Surrogate however takes notice of modern banking practices under which there is little or no inconvenience or delay, and that numerous government insured banks make a practice of accepting deposits and withdrawals, paying- interest from the date of deposit to the date of withdrawal.
*570 The executor has also submitted for determination the fair amount of his compensation for legal services in addition to the statutory commissions. The court now fixes the fee at $850 for all services including this accounting and implementation of the decree, plus $81.70 disbursements. The executor shall also be allowed the usual statutory commissions.
The court holds that an amount equal to simple interest, at the rate of 5% per annum on the said balance, shall be deducted from the commissions. The period of computation of said interest under the circumstances presented shall be from July 1, 1967 to the date of such deposit in an interest bearing account to be shown by affidavit, otherwise to be computed to the date of settlement of the decree herein.