## AMERICAN NAT. BANK *v.* FIDELITY & DEPOSIT CO.
## EXCHANGE BANK *v.* FIDELITY & DEPOSIT CO.

1. If a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting; and it appearing that the funds alleged in this case to have been diverted and misapplied were the assets of an insolvent corporation, and that the funds had been deposited in the bank by a receiver appointed by an order of the superior court, which provided that such funds should only be paid out on checks signed by the receiver and countersigned by the judge, of which order and the provisions thereof the bank had knowledge, the creditors of the corporation, to whom the receiver sustained a fiduciary relation, would have had the right to enforce the liability incurred by the bank because of having paid out such funds upon checks not countersigned as provided.

2. But when the creditors or the obligee in a bond given by the receiver for the faithful performance of his duties relating to the funds, upon a breach of trust by the receiver, participated in by the bank, brought suit and recovered judgment against the receiver and the surety on the bond, and the surety paid the judgment, such surety is subrogated to the rights of the creditors to enforce the liability incurred by the bank on account of its participation in the breach of trust by the fiduciary.

3. It appearing that the right of action against the defendant, once existing in favor of the parties to whose rights the plaintiff in this case is subrogated, is barred by the statute of limitations, the right of action upon the part of the plaintiff is also necessarily barred.

Argued March 13,—Decided October 4, 1907.

Complaint. Before Judge Hodges. City court of Macon. January 31, 1906.

The Fidelity and Deposit Company of Maryland, hereinafter called the Fidelity Co., brought separate actions against the American National Bank of Macon, Ga., hereinafter called the National Bank, and against the Exchange Bank of Macon, Ga., hereinafter designated as the Exchange Bank, alleging substantially the same matters of complaint in both petitions. In each case the defendant bank filed general and special demurrers, which demurrers were overruled, and the defendants excepted. The issues presented by the bills of exceptions in the two cases are identical, and will be decided together; as a decision in one case will necessarily control the decision in the other. The petitions of the Fidelity Co. allege the following material facts: In De-

cember, 1893, H. C. Tindall and others, owners of all the capital stock of the Macon Hardware Company, hereinafter called the Hardware Co., a private corporation, filed their petition to the superior court of Bibb county, alleging the insolvency of the Hardware Co., and praying that a receiver be appointed to administer the assets of the corporation for the benefit of its creditors. The Hardware Co. and its creditors, including the National Bank and the Exchange Bank, were made parties defendant to this petition. Thereafter the Exchange Bank, the National Bank, and numerous other creditors of the Hardware Co. entered their appearance in said suit, set up certain claims against the Hardware Co., and asserted their rights to share in the distribution of its assets. On January 9, 1894, the court passed an order appointing said Tindall permanent receiver of the Hardware Co., and designating certain banks, among them the Exchange Bank and the National Bank, as depositors to receive, hold, and disburse the funds of the receivership, "provided that the said banks will pay the customary rates of interest on such deposits at the rate of five per cent. per annum, if left in the banks for so long as six months, and no interest to be charged for the last thirty days prior to said money being checked out; each bank to have thirty days notice of the intention to check." Said order also provided that "The said receiver is hereby authorized and directed to make his deposits as aforesaid in his name as receiver, and no checks shall be drawn against said deposits except in his name as receiver, countersigned by the judge presiding of this court; except that checks drawn for expenses may be drawn without being countersigned by the judge as aforesaid, but the said checks shall specify for what expenses drawn." The Exchange Bank, the National Bank, and certain other named banks accepted said designation as depositories under the terms of said order, and the Fidelity Co. became security upon the bond of the receiver. It is alleged in the petition, that, by virtue of said order of the court and the acceptance of the terms of said order by the Exchange Bank, the National Bank, and the other named banks, said banks so designated as depositories agreed with the court and with the creditors of the Hardware Co. not to pay out the funds so received except on checks drawn by the receiver and countersigned by the judge of the superior court, unless said checks were drawn for

expenses and so specified; that the Exchange Bank and the National Bank failed and neglected to comply with the requirements of the aforesaid order of the court, and paid, out of the funds deposited with them, various sums aggregating $2901.53, and $475.44, respectively, upon checks signed by "H. C. Tindall, receiver;" that none of said checks had upon them any statement with reference to expenses, and were not countersigned by the judge, as provided in said order; and that the receiver appropriated the money so withdrawn to his own use, and has never accounted for the same. On the 22d day of February, 1901, a judgment was entered in favor of a number of the creditors of the Hardware Co., decreeing that said creditors should be entitled to participate in the distribution of the assets of the receivership in the hands of said receiver; and said receiver failed to account to the court for the sums of money which he had withdrawn from said depositories and misappropriated as above set forth. Thereafter, on March 26, 1901, R. A. Nisbet, clerk of the superior court, the obligee in the receiver's bond, brought suit, for the use of the creditors of the Hardware Co., on said bond against Tindall, receiver, as principal, and the Fidelity Co., as security, to recover the amount for which Tindall as receiver failed to account when required by the court to do so, which amount was composed in part of the sum of $2901.53 which had been withdrawn from the Exchange Bank and misappropriated by the receiver, and the sum of $475.44 which had been withdrawn from the National Bank in a like manner and misappropriated. Judgment against Tindall, receiver, and the Fidelity Co., security, was obtained on January 9, 1903, and on the 8th day of February, 1904, the judgment was paid in full by the Fidelity Co. Petitioner alleges that the Exchange Bank and the National Bank knew that the drawing of said checks, the same not being for expenses, and not countersigned by the judge, was unauthorized by the decree or order of the court, and said banks thereby enabled said receiver to commit a breach of trust by misappropriating the money so obtained; that the creditors of the Hardware Co. had a right to recover from the banks the sums of money which had been paid out on said checks; and that, having paid the judgment rendered against it, as security on the receiver's bond, in favor of such creditors, it is subrogated to the rights of said creditors, as against the Exchange

Bank and the National Bank. The insolvency of said Tindall, receiver, is also alleged; and petitioner prays judgment against the defendant banks for the respective amounts which had been withdrawn from them on said unauthorized checks.

Two of the grounds of demurrer are, "that there is no right of action in said petition, as amended, in the plaintiff against this defendant;" and "that as it appears from the face of the petition that the checks alleged to have been illegally paid by this defendant were drawn and paid by this defendant more than four years prior to the bringing of this action, that therefore said cause of action is barred upon the face thereof."

*Miller & Jones* and *George S. Jones,* for plaintiffs in error.

*Erwin & Callaway* and *John P. Ross,* contra.

BECK, J. (After stating the facts.)

1. In the absence of notice or knowledge, a bank can not question the right of a customer to withdraw a fund, nor refuse the demands of the depositor by check; and it is also true that if money be deposited by one as trustee, the depositor as trustee has the right to withdraw it, and, in the absence of knowledge or notice to the contrary, the bank would have a right to presume that the trustee would appropriate the money, when drawn, to a proper use; but it is also true that if a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting.

The Supreme Court of Maryland held that a bank, which credited a check to the individual account of a named person, when the check itself stated that it was for "deposit to the credit of" the person named, with the word "trustee" added to his name, was liable for participating in the breach of trust in case of loss ensuing to the trust estate by reason of his drawing out the fund by checks on his personal account. In the case referred to, the court said: "To deposit to the credit of Henry W. Clagett, trustee, was an explicit notification to the bank that Clagett was not the actual owner of the money. It was an equally explicit instruction to the bank not to place the fund to the credit of Clagett's personal account. . . Knowing that the money was not Clagett's, but that it was payable to him, and to be deposited to

his credit as trustee, the bank had no authority to place it to his individual credit; and if loss ensued by reason of Clagett drawing the fund out by check on his personal account, the bank is liable to make restitution to the trust estate. The bank in the eye of the law participated in the breach of trust of which Clagett was guilty." Duckett v. Nat. Bank, 86 Md. 403, 39 L. R. A. 89, citing Bundy v. Monticello, 84 Ind. 419. "If the bank participates with the trustee in a misappropriation of the fund, or knowingly permits such misappropriation to take place, it must answer to the beneficiary for loss thereby occasioned." 3 A. & E. Enc. Law (2d ed.), 832. See also cases cited supporting the text.

Much stronger is the reason for holding, in the case at bar, that the bank participated in the breach of trust than in the case of Duckett v. Nat. Bank, supra. It was agreed in this latter case, in behalf of the bank, that if the bank had obeyed the direction given to it and had opened an account with Clagett (the depositor) as trustee, still Clagett could have withdrawn the funds on checks appropriately signed, and could then have misapplied the money without involving the bank. But in the case at bar, Tindall, the receiver, could not by checks, however appropriately signed by himself, unless they were also countersigned by the judge, have withdrawn the funds. Such were the express terms of the order or decree. The defendants knew the provisions made in the decree as to the manner in which checks, except checks for expenses, should be signed. They knew that they were depositories of trust funds, for the safeguarding of which extraordinary care and caution was being exercised by the court. We do not know by the use of what terms of direction, in a decree or order for the deposit of funds in a designated bank, more emphatic notification could have been given this defendant that payment upon any check, not countersigned as prescribed in this order, would amount to an aiding of a trustee in the misapplication of the funds. By the improper withdrawal of the funds, Tindall was clearly guilty of a breach of trust. The bank had knowledge of this breach of trust, knowing as it did the express terms upon which Tindall might check out the money,—terms which, so far as affect the sum now sued for, were plainly violated. And having the knowledge that a breach of trust was being committed, by payment of the checks improperly drawn and not counter-

signed by the judge of the superior court it aided in that breach, and in the consequent misapplication of the funds; and having done so, it became liable to the beneficiaries of the trust, that is to the creditors of the Macon Hardware Co., to whom Tindall sustained a fiduciary relation.

2. That liability determined, we have to decide whether the surety, having paid the judgment against its principal, the receiver, was subrogated to all the rights and remedies of the obligee in the bond and the creditors of the Macon Hardware Co. against the bank for having participated in the breach of trust and enabled the receiver to misappropriate the funds. "A surety who has paid the debt of his principal is subrogated both at law and in equity to all of the rights of the creditor, and in a controversy with other creditors ranks, in dignity, the same as the creditor whose claim he paid." Civil Code, §2995. "He is entitled also to be substituted in place of the creditor as to all securities held by him for the payment of the debt." Ib. §2996. That the surety was entitled, under the facts alleged in the petition, to the beneficial application of the doctrine of subrogation seems to admit of little doubt. We find a general statement of the doctrine as follows: "Sureties of a fiduciary, who are compelled to satisfy a liability occasioned by his default, devastavit, or breach of trust, will be subrogated to all rights and remedies of the cestui que trustent, the creditors, or other beneficiaries, against the fiduciary or those participating in the default, devastavit, or breach of trust. This rule is applicable to receivers." 27 Am. & Eng. Enc. Law (2d ed.), 219. In the case of Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286, it was held that the doctrine of subrogation "is not founded on contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien, and security to which the creditor could have resorted for the payment of his debt." These general statements of the doctrine of subrogation receive a special application in an adjudicated case directly in point upon the question now before us. In the case referred to it was said that where a bank has participated in the clerk of the court's breach of trust in receiving to his personal credit and converting to his own use interest allowed to him for the use of

the State's money placed to his credit as clerk, a surety on the clerk's official bond who has paid a judgment recovered by the State is subrogated to every right of the State in respect of the claim, including the right of the State against the bank. The court says: "The theory of the appellant's case is that the bank so aided and participated in Van Sant's diversion to his own use of the interest on the deposits as to have been equally guilty with him of the breach of duty thereby made, which, in view of his relation to the deposits, amounted to a breach of trust; that under those circumstances the State could have recovered from the bank the amount of the diverted interest; and that the appellant, having as surety satisfied to the State the amount of its loss, is entitled to be subrogated to its rights against the bank in the premises." And the court added, in upholding the contention of the appellant, "The facts of the present case, in our opinion, bring it within the class of cases last referred to (holding that the surety of a fiduciary is subrogated to the rights and remedies of both the trustee and the cestui que trust against the fiduciary and those participating in the wrongful act), and we think both upon principle and authority the appellant should be subrogated to the right of the State to recover from the appellee as a participant in Van Sant's breach of trust in receiving to his personal credit and converting to his own use the sum of $3,774.70, allowed to him by the appellee in return for the use of the State's money deposited to his credit as clerk of the court of common pleas." American Bonding Co. *v.* National Mechanics Bank, 55 Atl. 395.

3. But while, as we have seen, the plaintiff in this case, as the surety, became subrogated to the rights of the creditors to enforce the liability incurred by the banks on account of their participation in the breach of trust, relatively to the right to enforce that liability the plaintiff in this case stands in the place of the obligee in the bond or of the creditors, for whose benefit this bond was taken. The participation by the bank in the breach of trust, in paying out the money improperly upon checks drawn by the receiver without being countersigned as provided in the order, was a wrong or tort against the creditors, giving rise to a right of action against the wrong-doer, the bank, at the time of the commission of the wrongful act. And inasmuch as the tort on

the part of the bank was complete at the time of the wrongful payment of the checks, and it became immediately liable to suit for such wrongful act, the statute of limitations began to run immediately, and at the expiration of four years from that date the right of action was barred by the statute of limitations. This is clearly so had the obligee in the bond or the creditors sought to enforce the liability incurred by the bank. And with reference to the enforcement of that liability, the surety, the plaintiff in this case, stands in no better position than would the party to whose rights he is subrogated. "The plaintiff, being subrogated, as he was, to all the rights of A., can have and exercise no greater rights than he had. This is a cardinal principle in all cases of subrogation. Where one takes the place of another, he can take and exercise no greater rights than such other could have done." Harris on Subrogation, 580, §841, citing Walker *v.* Vaudry, 4 Rob. (La.) 395. See also Rodman *v.* Sanders, 44 Ark. 504.

In the present case, the first of the unauthorized payments by the bank upon the receiver's checks was made on the 20th day of January, 1894, and the last was made on the 23rd day of January, 1899; and this action was instituted on the 29th day of July, 1904. It is clear, therefore, that the creditors could not enforce this demand against the bank; and if they could not, the plaintiff, who was subrogated to their rights, could not. This being true, and these facts appearing on the face of the petition, the demurrer setting up the bar of the statute of limitations should have been sustained, and the court erred in overruling it.

*Judgment reversed. All the Justices concur.*