(174 App. Div. 160)

### FIDELITY & DEPOSIT CO. OF MARYLAND v. QUEENS COUNTY TRUST CO.

(Supreme Court, Appellate Division, Second Department. June 16, 1916.)

1. BANKS AND BANKING ⊛⟶315(3)—TRUST ACCOUNT—CONVERSION—BURDEN OF PROOF.

   In an action by a surety company against a trust company to recover the amount of certain checks, which a trustee in bankruptcy, having the funds of the bankrupt estate on deposit with the trust company, had drawn out of such account and converted, and which the surety, on de-

fault of the trustee, had been compelled to repay to the bankrupt estate, the burden was on the surety to show the trust company's knowledge of the true nature of the account.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1219; Dec. Dig. ☞315(3).]

2. BANKS AND BANKING ☞130(1)—TRUST ACCOUNT—NOTICE.

In such case, the mere use of the word "trustee" in such an account did not give the trust company even constructive notice that the account was really a trust, and not an individual, account.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☞130(1).]

3. BANKS AND BANKING ☞130(1)—ACCOUNT—BANKRUPTCY ESTATE—NOTICE.

In such case, the marginal memorandum upon a number of checks drawn by the trustee in bankruptcy, "In re Wm. Trist Bailey, Bankrupt," constituted no notice to the trust company of the true character of the account, as it was not bound to take note of any matter appearing upon the checks, except such as served to carry out the contract between itself as debtor and the trustee as creditor; that is, the direction for payment, the signature of the depositor, and the indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☞130(1).]

4. BANKS AND BANKING ☞130(1)—CHARACTER OF ACCOUNT—BANKRUPT ESTATE—NOTICE.

In such case, a deposit of a check drawn to the drawer's order and indorsed, "Pay to the order of Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt," and "Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt, for deposit to the credit of Robert J. Peebles, Trustee," was notice to the defendant trust company that Peebles was then trustee in bankruptcy of Bailey, and that the money represented by the check had belonged to Peebles as such trustee, though it was not constructive notice that other deposits not containing the same information were of the same character.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☞130(1).]

5. BANKS AND BANKING ☞130(1)—CHARACTER OF ACCOUNT—BANKRUPT ESTATE—COUNTERSIGNING.

In such case, the fact that checks drawn against an account with defendant trust company had written across the face thereof the words "Percy G. B. Gilkes," followed by a stamp, "Deputy Clerk U. S. District Court, Eastern District of New York," as required by Bankr. Act July 1, 1898, c. 541, § 47, 30 Stat. 557 (Comp. St. 1913, § 9631), and by rule 29 of the Bankruptcy Rules (18 Sup. Ct. viii), providing that moneys of bankrupt estates can be drawn from a depository only by check of the trustee, countersigned by the clerk of the court, was not notice to the defendant trust company of the character of such account, where it was not shown that defendant knew of its designation by the court under Bankr. Act, § 61 (section 9645), as a depository.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☞130(1).]

6. BANKS AND BANKING ☞130(1)—PAYMENT OF CHECKS—NOTICE OF CONVERSION—LIABILITY TO SURETY.

In an action by a surety company against a trust company to recover the amount of certain checks, which a trustee in bankruptcy, having the funds of a bankrupt estate on deposit with the defendant in the name of "Robert J. Peebles, Trustee," had drawn against the account by checks to his own order, deposited to his own personal account with defendant, or to his own order and cashed to him by the defendant, or to one to whom the trustee made a personal loan, such checks, even if the trust company had notice that the account was an account of a bankrupt

estate, did not charge the trust company with notice that they constituted a conversion of the trust fund to the trustee's personal use.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☜130(1).]

7. **BANKS AND BANKING** ☜130(1)—**TRUST ACCOUNT**—**CONVERSION BY TRUSTEE**—**LIABILITY OF BANK.**

In such case, the defendant trust company was not liable to the bankrupt estate, where it did not itself benefit by the trustee's misappropriation of the moneys on deposit, as by having them applied to pay an indebtedness from him to it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319, 320, 322; Dec. Dig. ☜130(1).]

8. **SUBROGATION** ☜7(4)—**PRINCIPAL AND SURETY**—**OFFICIAL BOND.**

Plaintiff, a surety company, which had given a bond conditioned that a trustee in bankruptcy should in all respects faithfully perform all his official duties as such, running to the United States of America, which under Bankr. Act, § 50 (section 9634), might be sued upon by any person injured by any breach thereof, in view of the trustee's duty under Bankr. Act, §§ 47, 61, and Bankruptcy Rule 29 (18 Sup. Ct. viii), not to draw any money except by checks countersigned by the clerk of the court, etc., and to deposit all money with a designated depository and furnish such depository with a copy of the order designating it, and of the fact that in the trustee's application for the bond it was informed that the account was in the name of "Robert J. Peebles, Trustee," and not as trustee under bankruptcy, so as to give it express notice that the trustee was violating his duty as to keeping the account, so as to be liable to the defendant trust company on the bond, would not be allowed any right of subrogation to the right of the bankrupt estate to hold the trust company liable, since the doctrine of subrogation is equitable, and the surety, having participated in the principal's breach of duty, should not be allowed to exercise such right.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 22, 83, 92; Dec. Dig. ☜7(4).]

Thomas, J., dissenting in part.

Appeal from Trial Term, Queens County.

Action by the Fidelity & Deposit Company of Maryland against the Queens County Trust Company. From a judgment entered upon a verdict directed in favor of the plaintiff, from an order denying its motion for a new trial on the minutes, and from an order granting plaintiff an extra allowance, defendant appeals. Judgment and orders reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

Charles H. Street, of Jamaica (Leander B. Faber, of Jamaica, on the brief), for appellant.

Frank H. Platt, of New York City (Livingston Platt and George W. Field, both of New York City, on the brief), for respondent.

MILLS, J.　The action was brought by a surety company against the defendant trust company to recover the amount of certain checks, which Robert J. Peebles, a trustee in bankruptcy having the funds of the bankrupt estate on deposit with the defendant in the name of "Robert J. Peebles, Trustee," had drawn out of that account, to himself or manifestly for his own individual purposes, and which the

plaintiff, upon the default of the trustee, had been compelled to repay to the bankrupt estate, such trustee having died insolvent.

[1] Quite an amount of evidence was introduced by plaintiff, much of it documentary. That in behalf of the defendant was brief, consisting mainly of the testimony of its officers and employés to show that it had no express notice that the fund was that of a trust estate. The transactions of the account were back in 1906, 1907, and 1908, and defendant's witnesses had no specific memory other than what the entries showed. The learned trial court would not permit those witnesses to testify that they did not know that the account belonged to the bankrupt estate, and excluded all such questions upon objection of plaintiff, defendant excepting. I am not quite sure that those rulings were correct; but, as doubtless the burden was on the plaintiff to show knowledge by the defendant of the true nature of the account, probably no harm can be imputed to those rulings, if it should be concluded that the plaintiff did not sustain that burden.

The undisputed facts appear to be as follows:

On May 15, 1903, the said Peebles was appointed trustee in bankruptcy of the estate of the bankrupt, William Trist Bailey. By order duly made June 28, 1906, the trustee was required to give a bond in the sum of $25,000, and directed to deposit the funds with the defendant without any bond being required of the defendant. Apparently he had before given a bond in the amount of $10,000, which was superseded by the $25,000 bond. On June 28, 1906, an order was made by the referee, approved by the judge, directing the funds of the estate to be deposited with defendant. On September 10, 1908, an order was made designating the defendant as a general depository in bankruptcy estates and requiring it to give a bond for $10,000. There is no proof that any such bond was ever given. On June 27, 1906, the plaintiff gave its bond as surety for the trustee in the sum of $25,000. On July 3, 1906, the trustee opened an account with the defendant in the name of Robert J. Peebles, trustee. He died December 31, 1908, leaving a balance of $270.06 in such account, in which he had deposited an aggregate of $18,084.22, including a little interest allowed by defendant upon the balances. There is no evidence that any copy, either of said order designating defendant as such depository or of rule 29 of the Bankruptcy Rules prescribed by the United States Supreme Court (18 Sup. Ct. viii), which requires that moneys of such estates can be drawn from such a depository only by check of the trustee, countersigned by the clerk of the court, was ever served upon the defendant or came to its notice, or that any bond was furnished by it. No doubt, if the defendant did furnish any such bond, the plaintiff could easily have proven that fact.

Frank L. Entwisle was, on February 5, 1909, substituted as trustee in bankruptcy of the estate, in place of Peebles, deceased, and thereafter the administrator of that estate and the plaintiff, as his such surety, were called to account for his proceedings as such trustee, with the result that it was found that the decedent's estate was indebted thereon to the bankrupt estate in the sum of $8,142.11, which had been misappropriated by the decedent, and an order was duly made requiring plaintiff and the administrato: to pay that amount over to the sub-

stituted trustee, and, the Peebles estate apparently being insolvent, the plaintiff, as such surety, was compelled to pay over said amount to said substituted trustee. Thereafter the plaintiff brought this action against the defendant to recover $6,618.68, the amount of several checks drawn by Peebles upon such account with the defendant and paid by defendant, which checks were not countersigned by the clerk of the court.

At the close of the trial, upon plaintiff's motion, the court directed a verdict for the plaintiff for $6,600, the amount of nine such checks, which the evidence showed were used by decedent for his own personal purposes, with interest thereon, making in all the sum of $9,-221.29, and the court denied defendant's motion to submit to the jury various questions as well as the entire case.

The decedent made twelve separate deposits in such account, aggregating the sum of $17,621.42, all belonging to the bankrupt estate and being principally proceeds of sales of its real property. As to the form of those deposits, the following facts are to be noted:

The third deposit, being of $2,394.88, consisted of four checks, which decedent had received in payment for certain lands of the estate. They were drawn to the order of Robert J. Peebles, trustee (one being simply to Robert J. Peebles), and indorsed in the name of Robert J. Peebles, trustee. On September 13, 1906, he deposited two checks, aggregating $2,849.17, one of which was Exhibit No. 20. That was a check drawn by John J. O'Grady to himself and indorsed thus:

"Pay to the order of Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt. John J. O'Grady."

"Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt, for deposit to the credit of Robert J. Peebles, Trustee."

All of the deposit slips appear to have been simply in the name of "Robert J. Peebles, Trustee." It is evident that the only thing significant about the deposits, as giving any notice to the defendant of the true character of the fund, is the O'Grady check above described. The deposit slips indicate that there were eleven checks deposited in the account.

As to the checks drawn by decedent upon the account, the following are to be especially noted, viz.:

(a) Four checks, dated July 21, 1906, and charged as paid July 24th. Each of those checks bears, at the upper right-hand corner, the words "In re Wm. Trist Bailey," and has across the face thereof the words: "Percy G. B. Gilkes" (written), "Deputy Clerk U. S. District Court, Eastern District of New York" (stamped), and is signed "Robert J. Peebles, Trustee."

(b) Twenty-nine like checks, with similar heading and stamp and writing across the face were drawn by Peebles, with the same signing, upon the account at various intervals from July 27, 1906, to July 18, 1908.

(c) At different times, beginning with the first check on July 17, 1906, to and inclusive of the last one on September 19, 1908, 17 checks were drawn by decedent "trustee" upon the account, each of which 17 checks was without any such heading or countersigning. Those 17 checks included the 9 upon which recovery was had. Of those

9 checks the following 6, viz.: (1) September 17, 1907, $750; (2) February 11, 1908, $250; (3) March 13, 1908, $250; (4) April 24, 1908, $450; (5) June 22, 1908, $750; and (6) August 12, 1908, $1,-800—were drawn to his own order and deposited in his own personal account with defendant. Of the other three of the nine checks, two were drawn to his order and cashed to him by the defendant, and the other one, namely, that of September 21, 1907, for $1,000, to Robert F. Norton, was a personal loan by decedent to Norton. All of the 9 checks were drawn subsequently to the last deposit.

In addition to the fact of the conversion of the moneys by Peebles, it seems to be recognized by counsel that in order to sustain the recovery had the following propositions must here be affirmed, viz.: (a) That defendant had notice that the funds belonged to the bankrupt estate; (b) that it had notice that they were by the checks in question being converted by Peebles to his own use; (c) that the defendant would be liable to the bankrupt estate, although it did not itself benefit by decedent's misappropriation of the moneys, as by having them applied to pay any indebtedness by him to it; and (d) that, under the circumstances, plaintiff is subrogated to the right of the bankrupt estate to hold the defendant liable.

[2] As to the proposition (a) above stated, it seems well settled that the mere use of the word "trustee" in such an account does not give even constructive notice that the account is really in trust and not individual. Manhattan Sav. Inst. v. N. Y. Nat. Exch. Bank, 170 N. Y. 58, at page 67, 62 N. E. 1079, 88 Am. St. Rep. 640; Beaver v. Beaver, 117 N. Y. 421, at page 430, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Swartwout v. Mechanics' Bank, 5 Denio, 555.

In the cases cited by respondent's counsel relating to such an account, the fact that the depository actually knew the trust character of the account, not merely that it was deposited in the name of the customer "trustee," was clearly established. Thus in the case of American Nat. Bank v. Fidelity & Deposit Co. of Maryland, apparently the respondent here, 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666, cited at length in respondent's brief, the depository defendant had accepted its designation as such by an order of the court, which expressly provided that checks must be countersigned by the judge, except those for actual expenses, and that those must specify for what expenses drawn. In that case the checks in question were not of either such kind.

Also in Parks v. Knickerbocker Trust Co., 137 App. Div. 719, 122 N. Y. Supp. 521, the depositor, when he made the deposit, actually notified the defendant that in case of his death it was to be paid to certain officers of the association, which in effect, with the word "Treasurer," was notice that the fund belonged to the association.

Again, in Walker v. State Trust Co. (2d Dept.) 40 App. Div. 55, 57 N. Y. Supp. 525, it appeared that the deposit was originally made in the name of the infant real owner. The expression used by Mr. Justice Cullen in the opinion (40 App. Div. on page 58, 57 N. Y. Supp. on page 527), "for the words 'special guardian,' etc., were merely descriptio personæ," indicate that, if the deposit had been in the name of "Winchell, Special Guardian," the trust company would have

had thereby no notice that the fund was really in trust and belonged to another.

Moreover, in Niagara Woolen Co. v. Pacific Bank, 141 App. Div. 265, 126 N. Y. Supp. 890, which appears to be the main reliance of the respondent, at least among New York decisions, the fact that the money deposited by Philip Horowitz with the defendant, in the name of his firm, was really at least originally the property of the corporation, was evident upon the face of the deposited checks, they being drawn to the corporation and indorsed by Horowitz as its president.

The evidence, aside from the manner of opening the account, failed to show any actual direct notice to defendant that it was really the account of the bankrupt estate. Thus there was no proof that any copy or actual notice of either the first order by the referee in bankruptcy, approved by the judge June 28, 1906, or of the second order, made September 10, 1908, designating the defendant as a general depository, or of bankruptcy rule 29, which provides, in effect, that such funds can be drawn only by checks countersigned by the judge, clerk, or other officer designated under an order made by the judge, or any copy of such an order, or even the name of any officer so designated, was ever served upon or in any way communicated to the defendant. It was not proven that the general designation of the defendant, by the order of September 10, 1908, was ever accepted by defendant by furnishing the bond required by its terms or otherwise. There was no evidence that any of the defendant's officers or representatives were in any manner orally informed that the account was really that of a bankrupt estate, unless indeed they were so informed by the writings upon certain checks hereinafter particularly referred to and considered.

[3-5] The account, upon the credit side, shows 12 separate deposits, including 11 checks, all made by the slips in the name of "Robert J. Peebles, Trustee." Of the checks so deposited only one has any significance upon the question of notice, and that was the O'Grady check hereinbefore described. That was for $2,125, drawn by O'Grady to his own order, and indorsed by him to Peebles as trustee of the bankrupt estate, and by Peebles in that name. It had been given by a purchaser upon a sale of some of the bankrupt real property. That check was deposited in the account, with another check, by the usual slip in the name of "Robert J. Peebles, Trustee," on September 13, 1906.

Upon the other side of the account it appears that decedent drew in all 50 checks, of which 33 had, across the face thereof, the words "Percy G. B. Gilkes" (written), and "Deputy Clerk U. S. District Court, Eastern District of New York" (stamped), and that 21 of the 33 checks had, written in the upper left-hand corner, the words "In re Wm. Trist Bailey, Bankrupt," and 4 of them had, written in the same place, the words "In re Wm. Trist Bailey." The contention of the plaintiff is that those stamps and writings upon the face of the 33 checks, and the indorsement upon the O'Grady check deposited in the account as above stated, gave to the defendant at least constructive notice that the account was really that of the bankrupt estate.

As to the effect of the marginal memorandum upon the 21 checks,

viz., "In re Wm. Trist Bailey, Bankrupt," the cases cited by the counsel for the appellant seem to sustain his contention that such a memorandum constituted no notice to the defendant of the true character of the account.  In State National Bank v. Dodge, 124 U. S. 333, 8 Sup. Ct. 521, 31 L. Ed. 458, the defendant bank, having by court been made a general depository of court funds, the practice was for the clerk, in the case of each deposit, to write upon the deposit slip the number of the bankruptcy case to which the fund belonged, and of the bank to enter such number with the deposit, and for the checks to have written upon them, at the right-hand upper corner, the number of the case, and below the words "In the Matter of (name filled in), Bankrupt."  Many deposits were made in different cases.  Several checks were given to Dodge in one case upon account of claims of his against that estate, but the bank refused payment of them for the reason that it had already paid, upon other checks, all of the deposits, although it should have had a balance of the deposits in that case sufficient to pay those checks.  In other words, the bank had paid out such balance upon checks drawn in other cases according to the memoranda thereon.  The United States Supreme Court held that the bank was not liable for such payments made in the wrong cases, and the opinion said:

"No bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit; and in such case the memoranda and figures are not a notice to the bank that the particular check is to be paid only from a particular fund.  So, too, a mark on a deposit ticket, if intended to require a particular deposit to be kept separate from all other deposits placed to the credit of the same depositor, must be in the shape of a plain direction, if such a duty is to be imposed on the bank."

The appellant's brief states that the case of State National Bank v. Reily, 124 Ill. 464, 14 N. E. 657, is a similar case to the Dodge Case, supra, brought by another like party against the same bank in the Illinois state court, and decided in the same way by the Supreme Court of that state at about the same time.

In the case of Duckett v. National Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, also cited by appellant's counsel, the bank received and deposited in the personal account of one Clagett a check which had written into it these words, "being the balance of purchase money due him as trustee from John R. Coale."  Afterwards Clagett withdrew the money and applied it to his own use. The Maryland Court of Appeals held that the bank was not liable.

In the case of La Montagne v. Bank of N. Y. Nat. B. Ass'n, 183 N. Y. 173, at page 181, 76 N. E. 33, it was held that, where a limited partnership made a deposit with the defendant in its firm name, of money contributed by the special partner, a statement accompanying the deposit that the certificate of limited copartnership would not be filed until the next day, and that the firm would not commence business for two or three days, did not put the bank upon its inquiry to learn, as it might from the articles, that the firm could not begin until the later specified day.  It was held that the bank was not liable for paying out before that day a part of the deposit upon a check in the name of the firm, drawn by one of the other partners.

In the Niagara Woolen Co. Case, supra, 141 App. Div. 265, 126 N. Y. Supp. 890, largely relied upon by the respondent's counsel, it was perfectly evident upon the face of all of the checks deposited that the funds belonged to the corporation and had been by Horowitz's indorsement as president applied to the use and benefit of his firm or himself individually. I do not see that that case has any bearing upon the question of notice here, except as to the effect of the O'Grady check, which was indorsed to Peebles as trustee of the bankrupt. That check would seem to have been notice to the defendant that Peebles was then (September 13, 1906) trustee in bankruptcy of Bailey, and that the money represented by the check had belonged to Peebles as such trustee. None of the other 10 checks, which form nearly all of the entire sum deposited, contained any such information, and I do not see how that one check gave to the defendant any constructive notice that the other deposits were of the same character. As to the amount of that check, $2,125, it is undisputed that defendant paid out far more than that amount in proper payments for the benefit of the bankrupt estate.

It would seem, from the authorities reviewed, that defendant was not bound to take note of any matter appearing upon the checks, except such as served to carry out the contract between itself as debtor and Peebles as creditor, viz., the direction for payment, the signature of the depositor, and the indorsement.

As to the countersigning of the 33 checks by the clerk of the court, it is evident that, under the provisions of rule 29 and section 47 of the Bankruptcy Act, such countersigning was necessary, provided a depository had been designated by the court under section 61 of that law; but the difficulty here is that there is no evidence that the defendant had ever been advised that any such designation had been made by an order, and apparently the general designation was not made until by the order of September 10, 1908, which was after all except the last payment in question had been made. If it may be held that defendant is to be charged with having known the federal statutes, and even the rule above referred to, it certainly was not chargeable with knowledge of the order of designation. Unless the defendant had notice of such order, as well as the rule and the statutes, I do not see that it was bound to take note of the signing and stamping by the clerk, any more than of the marginal memoranda.

Respondent's counsel makes much of the fact that 3 of those 33 checks were certified by defendant; but I do not see that that fact gave to the writings upon their face any greater effect as notice to the defendant of the real nature of the account. It means merely that the defendant had those 3 checks twice under observation before actually paying them. I think, therefore, that the evidence did not warrant the conclusion that the defendant, when it paid out the 9 checks, had notice that the account belonged to the bankrupt estate.

[6, 7] As to the second proposition above stated as (b), I think that, even if the defendant had notice that the account was really that of the bankrupt estate, it is not chargeable by the nature of the nine checks with the fact that they constituted conversion by Peebles of the trust fund to that extent to his own personal use. The contrary seems to

me to have been held in the Niagara Woolen Co. Case, supra, 141 App. Div. 265, 126 N. Y. Supp. 890, and that case is also decisive in favor of the plaintiff as to the third proposition above stated as (c). The majority of the court there distinctly held that such a bank is just as much liable where it permits such a depository to apply the trust funds to his own personal uses, e. g., to the payment of his debt to a third party, as where it receives from him the money in payment of his debt to it. There was in that case a very strong dissent by Justice Scott, with whom Justice Clarke concurred, to the effect that to hold such a depository liable it must appear that it derived some personal benefit from the transaction, e. g., the payment of a debt to it. In Havana C. R. R. Co. v. Knickerbocker T. Co., 198 N. Y. 422, 430, 92 N. E. 12, 14 (L. R. A. 1915B, 720), which apparently was decided upon another point not pertinent to this case, that court, by its present Chief Judge writing, stated:

"Here the checks were not designed to discharge any obligation owing to the defendant. The defendant merely collected the amounts thereof and placed the same to the credit of the payee."

In the recent case of Bischoff v. Yorkville Bank (December 30, 1915) 170 App. Div. 679, 156 N. Y. Supp. 563, the Appellate Division in the First Department held that the bank was liable where it had permitted the executor to apply the funds to his own personal uses, and not merely for the portion thereof which he had used in paying his own indebtedness to the bank; Mr. Justice Scott alone dissenting, and upon the same ground as in the Niagara Woolen Co. Case, supra.

Since the argument before this court of the case here at bar, the decision of the Court of Appeals in the Bischoff Case, supra, has been announced (May 2, 1916), being reported in 112 N. E. 759. Therein that court affirmed, with some slight modification of amount, the order of the Appellate Division affirming a judgment in favor of the plaintiff in the case where an executor had, by means of checks drawn by him as such upon the account of the estate in another bank, to himself individually, and by him deposited in his own individual account with the defendant bank, and then by checks to the defendant bank, applied a considerable part of the funds to the payment of his notes to such bank, and by other checks nearly all of the rest of it to other personal uses; the action having been brought by the administrator with the will annexed, who had succeeded the executor. The Court of Appeals, by Collin, J., writing, in that case held: (a) That the form of the checks deposited notified the defendant bank that the funds belonged to the estate; (b) that the checks upon the account with the defendant bank, to pay the executor's individual debts to that bank, were constructive notice to the bank that he was converting the estate funds to his own use, and therefore charged it with the knowledge which, upon due inquiry, it might have obtained that his other checks were really for the same purpose; and (c) that therefore the defendant bank was liable for all of the sums out of the funds of the estate, which he converted to his own use, both those actually paid to the defendant upon his debts to it and those applied by him to his other personal uses. The opinion, as to the latter class of checks, declares that the mere fact that checks

were drawn by him upon the account to his own personal order would not have given such bank notice that he was intending to convert the moneys to his own use, but that the bank in that case would still have been warranted in presuming that he was not so engaged and did not intend to do so.

It therefore appears that the law of this state now is that the depository bank is not bound, from the mere form of the check, viz., being payable to the depositor's individual order, to take notice that the depositor, being a trustee of the funds, is thereby intending to divert the moneys to other than the trust purposes, but must have some other notice of such fact in order to be chargeable therewith. In the case here at bar no such other notice was proven, there having been no application by the trustee of any of the funds to the payment of his own personal indebtedness to the defendant. Therefore, upon the authority of the Bischoff Case, supra, in the Court of Appeals, I conclude that the trial court was not warranted in finding the defendant liable for Peebles' said conversion of the trust funds.

[8] As to the fourth and last proposition above stated as (d), it would seem that the American National Bank Case, supra, 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666, is an authority that such a surety as the plaintiff may maintain such an action if the representative of the bankrupt estate could and the surety has paid to such representative the deficiency. Still the contention of the counsel for the appellant, to the effect that this plaintiff should not be allowed such right of subrogation, because it is plain that it has violated its own duty in the matter and would be liable to this defendant upon the bond, seems to have some substantial force. In such bond it covenanted that Peebles should "in all respects faithfully perform all his official duties as said trustee." The bond ran to the United States of America, and may be sued upon by any person injured by any breach thereof. See section 50 of the Bankruptcy Act. It was the duty of the trustee under sections 47 and 61 of that act, and said rule 29, not to draw any money except by checks "countersigned," etc., and to deposit all moneys with a designated depository and furnish such depository with a copy of the order designating it, and by necessary implication to expressly advise it of the true nature of the account. Of course, if all that had been done, it is fair to presume the defendant here would not have paid out the money in suit. Indeed, it appears that in the very application made by Peebles to this plaintiff for its bond the plaintiff was informed that the account was in the name of "Robert J. Peebles, Trustee," and not as trustee under bankruptcy even. Thus at the very inception of the giving of the bond the plaintiff had express notice that Peebles was violating his duty in the manner in which this account was kept. The doctrine of subrogation is equitable, and the argument seems of force that a surety, having so practically participated in the breach of duty on the part of the principal, should not be permitted to exercise that right.

The only authority at all directly upon this question, cited in either brief, is the case of American Bonding Co. v. Welts, 193 Fed. 978, 113 C. C. A. 598, decided by the United States Circuit Court of Appeals,

Ninth Circuit, February, 1912. That case arose in the state of Washington, which had a statute similar to section 50 of the Bankruptcy Law, providing that the bond might be sued upon by any person injured by any breach thereof. The plaintiff there, as surety upon the bond of a defaulting county auditor, had been compelled to pay to the county the loss, and in the action it sought to be subrogated to the county's rights against the county treasurer (the depository of the county's moneys) and the county commissioners, on the ground that the loss was occasioned by their negligence as well as the wrong of the county auditor. At the trial judgment was rendered in favor of the defendant. Upon the appeal the court affirmed that judgment, and the opinion upon this, the vital question in the case, said:

"The obligation assumed by the appellant for the faithful and honest official acts of the auditor was therefore not only for the benefit and protection of the county of Skagit, but for the benefit and protection of all others who might be injured by a breach of the conditions of that bond, among them the treasurer and commissioners of the county. From the averments of the bills in these cases it is clear that the proximate cause of the county's loss and of the resultant loss to the appellant was the malfeasance of the auditor, for whose official honesty and faithfulness the appellant had bound itself. To permit it to recoup a loss so sustained by means of subrogation out of those for whose benefit, in part, the surety company assumed the obligation, would be to put that doctrine to a use wholly foreign to its nature."

This point does not appear to have been considered in the American National Bank Case, supra. Perhaps the bond in that case was not general; that is, in favor of any person injured by the default of the principal.

Upon the question whether or not the plaintiff here, the surety, is upon the facts entitled to be subrogated to the right of the bankrupt estate to recover from this defendant, if such right of that estate were established, the American Bonding Company Case, supra, is directly in point and to the negative, and I recommend that we so hold.

Therefore I advise that the judgment and orders be reversed, and the complaint dismissed, with costs

CARR and RICH, JJ., concur. THOMAS, J., concurs on second ground only. JENKS, P. J., not voting.