NATIONAL SURETY COMPANY, Respondent, *v.* THE NATIONAL CITY BANK OF BROOKLYN, Appellant.

First Department, November 8, 1918.

Sureties — banks and banking — negotiable instruments — bond of public official — subrogation of surety to rights of city — extent of surety's rights — fictitious payee of check — forged indorsement — liability of bank.

A surety on the bond of a city official, made to the city chamberlain individually and in his official capacity and to the city, upon the payment to the city of any losses caused by the payment by a bank of checks drawn in favor of fictitious payees and cashed by the official, is entitled to be subrogated to any right of action which the city has against the bank.

The same rules as to subrogation of a surety apply to a surety on the bond of a public official as obtain where the bond is for a private employee.

The doctrine of subrogation gives to the surety who has paid the debt of his principal, not alone all of the rights and remedies which the creditor would have against the principal, but also all of the rights and remedies that the creditor would have against all persons liable for the debt.

Where an employee of a city chamberlain's office, charged with the duty of preparing checks for the payment of jurors' fees, made checks payable to fictitious payees, had them signed by the proper official, who had no knowledge of their fictitious character, and afterwards indorsed and cashed them, the bank, in paying the checks, becomes liable to the city for the amount paid.

Payments made on forged indorsements are at the peril of the bank, unless it can claim protection upon some principle of estoppel, or by reason of some negligence chargeable to the depositor.

When a bank pays out money on a forged indorsement it is liable to the maker of the instrument.

MERRELL, J., dissented.

APPEAL by the defendant, The National City Bank of Brooklyn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county

of New York on the 16th day of November, 1917, upon the verdict of a jury rendered by direction of the court.

*Charles Levy* of counsel [*Jacob Brenner*, attorney], for the appellant.

*William R. Page*, for the respondent.

PAGE, J.:

The action is to recover on eleven checks drawn on the defendant bank payable to fictitious payees by one Flynn, an employee in the office of the chamberlain of the city of New York. The plaintiff, having been surety on Flynn's bond, has paid the city's loss and claims in this action to be subrogated to the rights of the city against the defendant bank. The facts, briefly stated, are as follows: During the years 1913, 1914 and 1915 Herbert L. Flynn was employed by the city as a clerk in the office of the chamberlain. His duties were to prepare the payrolls for jurors in the counties of Kings, Queens and Richmond, and draw the checks for the sum to which each juror was entitled. He would then submit these checks to the chamberlain or some other official having power to sign the same and receive them back to mail to the several jurors. When the paid checks were returned by the defendant, they were delivered to Flynn, who would make a note of the payment on the payroll opposite the jurors' names. He also had charge of the balancing of the bank account on which these checks were drawn. During the years above mentioned Flynn drew, on the regular blanks upon which the words " Jurors' check " appeared, checks payable to fictitious names that did not appear upon the jurors' payrolls, presented the same for signature with the genuine checks, and after they were signed by the proper officer, indorsed the name of the fictitious payee and cashed them at various stores. These checks were passed through various banks and ultimately paid by the defendant bank. Checks to the amount of $2,979.02 were thus drawn and paid. On the discovery of this peculation, upon demand, the plaintiff, as surety on Flynn's bond, paid to the city the amount thereof, and has recovered judgment in this action for $433, the amount of eleven of such checks.

The appellant's counsel argues that no right of subrogation exists in favor of the surety on the bond of an official. He cites as authority for this contention several cases, in some of which the language of the opinion would seem to support his contention. (*National Surety Co.* v. *Arosin*, 117 C. C. A. 313; 198 Fed. Rep. 605; *American Bonding Co.* v. *Welts*, 113 C. C. A. 598; 193 Fed. Rep. 978; *American Bonding Co.* v. *State Savings Bank*, 47 Mont. 332; *Stewart* v. *Commonwealth*, 104 Ky. 489.) An examination of these cases shows, however, that the liability of the surety was not alone to the public authority but either, by the terms of the bond or the requirement of statute, was also to any one who should suffer loss by reason of the official's misconduct. It would, therefore, be absurd to allow the surety to be subrogated to the rights of one whom it had indemnified against another who if compelled to pay would have a right of action to recover from the surety what he had been compelled to pay, for by the payment he would have suffered loss by reason of the official's misconduct. In the case at bar the bond was to the chamberlain individually and in his official capacity and to the city of New York, not as in the above cases either in terms or by statutory requirement to any one else. Therefore, the above cases are not applicable to the instant case. The distinction here pointed out was commented upon in the case of *Fidelity & Deposit Company* v. *Queens County Trust Co.* (174 App. Div. 160, 172–174) in discussing the case of *American National Bank* v. *Fidelity & Deposit Company* (129 Ga. 126), which is relied upon by respondent, and *American Bonding Co.* v. *Welts* (*supra*), relied upon by the appellant. There is no valid reason why the same rules as to subrogation should not be applied to the surety on a bond of a public official as would obtain if the bond was for a private employee.

The right to subrogation primarily was adopted by courts of equity from the civil law, and has been so broadened and extended that it has been called " the ' mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it.' " (*Arnold* v. *Green*, 116 N. Y. 566, 571.) The doctrine of subrogation gives to the surety who has paid the debt of his principal not alone all the rights and remedies that the creditor would have

as against the principal, but also all the rights or remedies that the creditor would have against all persons liable for the debt. This is founded upon the theory that a court of equity would compel the creditor to assign a cause of action which he had against a third person to sureties who have paid the debt of their principal.

Therefore, in the case at bar if the city, on receiving payment for the amount wrongfully obtained, had given an assignment of its right of action against the bank, there could be no question that the surety would stand in the place of the city and could prosecute any remedy that it had against the bank. This being true, " it is going but one step farther to consider that as done, which the surety has a right to have done in his favor, and thus to sustain the substitution, without an actual assignment." (*Lidderdale* v. *Robinson*, 12 Wheat. 594, 596.) Therefore, if the city had any remedy against the bank, the plaintiff became vested with it upon paying its principal debt.

This brings us to the consideration of the next question, did the city under the circumstances of this case, have a cause of action against the defendant? The city was the depositor of the moneys which the bank held upon the implied contract to pay it out only to such persons as the city directed. Payments made from such fund without the order of the city, afford the bank no protection when called upon to account for the money deposited. " Payments made upon forged indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel or by reason of some negligence chargeable to the depositor. These rules are so familiar and so well established and illustrated by the adjudged cases that a bare reference to them is all that is needful here." (*Shipman* v. *Bank of S. N. Y.*, 126 N. Y. 318, 327, and cases cited.) The *Shipman* case, in its facts and principle, would seem to be determinative of this case. The appellant, however, contends that the instant case is within the cases of *Hartford* v. *Greenwich Bank* (157 App. Div. 448; affd., on opinion below, 215 N. Y. 726), and *Holub-Dusha Co.* v. *Germania Bank* (164 App. Div. 279). We have recently had occasion to consider the *Shipman* and *Hartford* cases and the case of *Mercantile National Bank* v. *Silverman* (148 App. Div. 1; affd., on opinion

below, 210 N. Y. 567), in the case of *United Cigar Stores Co.*
v. *American Raw Silk Co., Inc.* (184 App. Div. 217) in all of
which the question of liability for checks made payable to
fictitious payees was considered with apparently conflicting
results.    There is, however, no lack of harmony in these
decisions.    As was pointed out in *Phillips* v. *Mercantile Nat.*
*Bank* (140 N. Y. 556, 562): " The fictitiousness of the maker's
direction to pay does not depend upon the identification of the
name of the payee with some existent person, but upon the
intention underlying the act of the maker in inserting the
name."    Thus if the negotiable instrument is made payable
to the order of a fictitious or non-existing person, and such fact
was known to the maker, or when the name of the payee does
not purport to be the name of any person, the instrument is
payable to bearer.    (Neg. Inst. Law [Consol. Laws, chap. 38;
Laws of 1909, chap. 43], § 28.)    The reason for this is
obvious, a check payable to an existing person can only be
paid to, or negotiated by, the indorsement of the person
named therein as payee.    When, therefore, the maker know-
ingly inserts a fictitious name, or that of a non-existent person,
or a name as payee that does not purport to be the name of
any person, the check can never bear a genuine indorsement,
hence the drawer of the check knowing that the check cannot
be indorsed by the person named is deemed to have intended
it to be payable to bearer.    Under such circumstances, having
so drawn the check with knowledge, and delivered it, he is
estopped from denying his liability.    Likewise if the maker
draws the negotiable instrument with the intent that it shall
be paid to the payee named therein, he is liable even though
the name be assumed by another person, the instrument being
delivered to the person who has assumed the name.    This
was the reason for the decision in the *Hartford* and the *Holub-*
*Dusha Co.* cases.    In the first, the checks were intended to be
given in payment of bills of James Wilson; that name had been
assumed by Rypinski, and the checks reached and were
indorsed by the identical person for whom they were intended.
In the second case, the contract for the sale of the real estate
bore the signature of " R. W. Birchard " written thereon by
one Fookes.    The check was indorsed to R. W. Birchard,
it was delivered to Fookes who indorsed R. W. Birchard.    The

check reached and was indorsed by the identical person for whom it was intended. Therefore, in both of those cases the maker was estopped as to third persons from denying liability.

In *Mercantile National Bank* v. *Silverman (supra)* the checks were drawn and intended for certain persons who were officers in the army. The person who procured and indorsed them did not purport to be those officers, nor had he assumed their names. Under such circumstances no liability could attach to the maker. In *United Cigar Stores Co.* v. *American Raw Silk Co., Inc. (supra)* the person who obtained and indorsed the check did not purport to be the person for whom the check was intended. He had not assumed that name. Therefore, the maker being ignorant of the fact that the name of the payee was fictitious and the check not having come into the possession or been indorsed by the person, or any one assuming to be the person intended, the maker was not liable. No estoppel to deny liability existed.

In the case at bar the names of the persons to whose order the checks were drawn did not appear upon the jurors' pay-rolls. It was not, therefore, the intention of the maker to pay any persons either of, or who had assumed, those names. Through ignorance of the fact that the names were fictitious the checks were signed and delivered to Flynn for the purpose of having them delivered to those persons but they never reached such persons or any one who had assumed those names. As no such persons existed, no one could validly indorse them. The indorsement by Flynn of the names on the checks were forgeries. (Penal Law, § 883.) When a bank pays out money on a forged indorsement it is liable to the maker. As we have seen above the city was not estopped from denying its liability on the checks. Appellant's counsel argues that the city could not recover because of its own negligence. But that question is not before us; no such defense was pleaded, and, therefore, that issue was not litigated.

The judgment should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN and SHEARN, JJ., concurred; MERRELL, J., dissented.

Judgment affirmed, with costs.